[No. 16065. Department One. January 26, 1921.]

## S. R. SHELLEY et al., *Respondents,* v. W. H. NORMAN et al., *Appellants.*[1]

EVIDENCE (184)—OPINION EVIDENCE—CONCLUSIONS. The testimony of a passenger in an automobile that there was not sufficient room to pass to the right of an approaching automobile, is not objectionable as calling for the conclusion of the witness.

HIGHWAYS (58)—NEGLIGENT USE—QUESTION FOR JURY—CONTRIBUTORY NEGLIGENCE. Whether plaintiff was guilty of contributory negligence in turning to the left to avoid an automobile collision, is a question for the jury, where there was testimony to the effect that it was done in an emergency to avoid a head-on collision with a car driven on the wrong side of the road wrongfully attempting to pass another car when there was not sufficient room or time to do so.

SAME (59)—NEGLIGENT USE—ACTIONS — INSTRUCTIONS.. Where a highway had two traveled tracks, it is proper to instruct to the effect that the right of the center of a highway to one using one of the traveled tracks would mean the right of the center of the track being used.

SAME (59). An instruction is proper where it is stated that one turning to the left in meeting another car is guilty of contributory negligence unless he had reasonable ground to believe that it was his duty to do so to avoid a collision and a reasonably prudent man would have honestly believed that the collision was imminent if he turned to the right.

[1]Reported in 195 Pac. 243.

DAMAGES (80)—EXCESSIVE DAMAGES—INJURY TO PERSON. A verdict for $2,000 damages sustained in an automobile collision is not excessive where the car was badly damaged, and both husband and wife were seriously injured, one sustaining a broken arm, bruises and other injuries, and the other two fractured ribs, and injury to chest, back and arm.

Appeal from a judgment of the superior court for Yakima county, Holden, J., entered December 4, 1919, upon the verdict of a jury rendered in favor of the plaintiffs, in an action in tort. Affirmed.

*Stephen E. Chaffee,* for appellants.
*Snively & Bounds,* for respondents.

HOLCOMB, J.—This is an action and cross-action for damages for injuries resulting from a collision of automobiles belonging to the respective parties. The jury found for plaintiffs in the sum of two thousand dollars, and, having unsuccessfully moved for a judgment *non obstante veredicto* and for a new trial, defendants prosecuted this appeal from the judgment rendered on the verdict of the jury.

Between five and seven o'clock in the afternoon or evening of August 11, 1918, respondents Shelley and wife were driving their Ford automobile along the public highway north or west toward the town of Zillah, in Yakima county. This road ran in a general northwesterly and southeasterly direction. Mr. Shelley was at the wheel of the car, one Wilson was riding beside him, and Mrs. Shelley sat on the rear seat holding a child. Approaching them from the other direction just before the accident, was one McNeice, driving his Overland automobile. Behind him came appellants in their Buick automobile. One Elliott, stepson of Norman, was driving, a Miss Anderson was riding in the front seat with him, and appellants Norman and wife rode in the rear seat, Mrs. Norman holding her

two-year-old child. All three cars collided after Elliott had turned out to his left-hand side of the road, and had passed, or was attempting to pass, the McNeice car. Mrs. Shelley was thrown out of the car onto the roadway, and sustained a broken arm, bruises and other injuries. Her baby was thrown out and fell on the hood of the Buick car. Mr. Shelley was not thrown out of his car, but had two ribs fractured, his chest injured and his back and arm bruised and wrenched. The cars of both appellants and respondents were badly damaged.

The facts as to the cause of the accident must be gathered almost entirely from the testimony given by the occupants of the respective cars at the time of the collision. As is usually true in cases of this kind, the witnesses gave somewhat different versions as to the details of the accident.

At the point near Zillah, where this accident happened, the highway was twenty-seven feet wide, eighteen feet being surfaced with gravel and maintained by the county, and the remaining nine feet being of dirt, not surfaced, but covered somewhat with rock raked off the adjoining surfaced roadway. Witnesses for respondents testified that the graveled portion of the road was the more generally used; that there was a drop of from six to eight inches from that part of the road to the dirt portion; that there were stones in the dirt part and it was rough; that, between the two portions of the road and along this drop or embankment, some grass and thistles grew. On the other hand, it was testified that one part of the road was traveled about the same as the other; that it was all nearly level; that the dirt part may have been three or four inches lower than the graveled part, but that it merged right into it and there was no drop from one part to the other.

Respondents introduced testimony to the effect that, at the time of the accident, their car was traveling at a speed of from fifteen to eighteen miles an hour. Appellant Norman and his stepson, Elliott, testified that the Shelley car was coming at the rate of thirty miles an hour; that it was "wobbling" in its course, or "perceptibly wavering."

The witness Wilson testified that, when the Shelley car was about one hundred feet from the McNeice car, the Norman car came from behind the McNeice car, went clear over to the dirt part of the road—the left, or wrong, side of the road for the Norman car—and, while traveling at the rate of at least thirty-five miles an hour, cut diagonally across the road in front of the McNeice car. Opposed to this testimony is that of young Elliott, who said he was driving the Norman car at a speed of but twenty-five miles an hour as he went by the McNeice car, which was traveling along at about fifteen or eighteen miles an hour; that he started to get across in front of the McNeice car in order that he might get over on his right side of the road and be out of the way of the Shelley car coming. He said he was about opposite the McNeice car when he saw the Shelley car coming; then said he was a little ahead of the McNeice car when he saw the Ford car of the Shelleys; that the Shelley car was about one hundred feet away from his (the Norman car) when he turned it in front of the McNeice car and to his right; that he was then driving the Norman car at about twenty-five miles an hour; that, when he had passed the McNeice car, he slowed down the Norman car and put on the foot brake, "because I wanted to see what the other car (the Shelley car) was going to do." He then said that the Norman car was almost at a standstill when the cars came together. None of the occupants of the Norman car was thrown out, although one door

came open and some peaches spilled from the Norman car where they were being carried. According to this testimony, the McNeice car had been run up the incline off the traveled part of the highway and all three cars were together.

Mr. Shelley's version of what happened just before the collision is to the effect that, as he was driving along on his right-hand side of the graveled portion of the road, at a speed of from fifteen to eighteen miles an hour, the Norman car suddenly came in sight, on its extreme left-hand, or wrong, side of the road, on the dirt portion thereof; that for him (Shelley) to turn his car farther to the right would have meant to drop down the embankment onto the dirt portion of the road and run head-on into the Norman car, rapidly approaching along that part of the road. Confronted with this emergency, Shelley said he turned to his left.

Elliott, the Normans' driver, testified that he turned to his right to get on his right side of the road, probably fifteen or twenty seconds before the collision, and that he was at "a practical standstill" at the time the cars came together. If this were true, it hardly seems probable that Shelley would have deliberately turned his Ford car to his wrong side of the road and run into the Norman car. The jury did not take this view. The jury believed the testimony of the Shelleys and their witnesses and determined that the driver of the Norman car was negligent.

Appellants' first claims of error, (1) and (2), are that the court erred in permitting respondents, the Shelleys, and their witnesses, the occupants of the car at the time of the accident, to testify that there was not sufficient room for their car to pass to the right of the Norman car at the moment of meeting the Nor-

man car; for the reason that this called for nothing more than a conclusion on the part of these witnesses. We do not so consider it. It called for a mere matter of calculation. It would not be necessary in such a case to ask the witnesses, respectively, how wide the Norman car was, and how much space was left in the road to the right of the Norman car, and how wide the Shelley car was, and thus make it a matter of subtraction. It was perfectly proper to ask the witnesses whether there was room for one car to pass the other to the right in the roadway.

Appellants earnestly contend that the undisputed facts show that respondents were guilty of such contributory negligence as to defeat any recovery by them. The following language, which is quite pertinent here, was used in the opinion in the case of *Tooker v. Perkins,* 86 Wash. 567, 150 Pac. 1138:

"Much of the argument of appellants assumes that certain facts tending to show contributory negligence on the part of respondents were undisputed. Since the verdict of the jury, we must consider the facts resolved as presented by the respondents. Where there is conflict in the evidence, the facts are for the jury and, unless physically impossible or naturally improbable so that reasonable minds could not differ thereon, we are compelled to accept as conclusive all those facts which must necessarily have been resolved by the jury in respondents' favor."

It was also said in that opinion:

"And, as Mr. Tooker [plaintiff] testified, as it [defendants' automobile] came around the standing automobile in front of the Roycroft it had veered to the east to pass around it, and he assumed that it would pass east of him instead of west; that it then suddenly veered west, and it was all so quick it may be inferred that he could not tell where it was going, but attempted to throw his wife out of its way by thrusting her to the left and forward. There is no infer-

ence to be derived from this that the respondent [plaintiff] assumed that the automobile would be driven down the east instead of the west driveway, contrary to the law of the road, or that, acting on such assumption, he stepped into collision with it. Great stress is laid upon this detail by appellants, and it is strenuously insisted throughout their argument that respondents assumed that the car would be driven down the east driveway instead of the west driveway, contrary to the law of the road. Neither of the respondents testified that they did so assume, and *their actions as described by them, together with all the testimony, were questions of fact and inference for the jury, and we are unable to resolve this question as one of law.* Even if they had assumed that the car would pass down the east driveway instead of the west and had acted upon that assumption, if its motions were as sudden and as rapid as they testified, it would still have been a question for the jury to determine whether the appellants were negligent. As was stated in *Sheffield v. Union Oil Co.*, 82 Wash. 386, 144 Pac. 529:

"'Being in imminent danger, an emergency was presented, and whether, under this emergency, the respondent acted with due prudence is, under all the authorities, a question of fact for the jury. The law does not scrutinize too carefully an act done by one who has been put in a position of danger by the one who inflicts injury upon him, leaving it for the jury to say under such circumstances whether the act in seeking to avoid the danger was the act of an ordinarily prudent man.'

"See, also, *Van Dyke v. Johnson*, 82 Wash. 377, 144 Pac. 540."

The case of *Lloyd v. Calhoun*, 78 Wash. 438, 139 Pac. 231, is cited as an authority and discussed by both parties to this appeal. There, under circumstances similar to the instant case, the plaintiff recovered in the trial court and the Department of this court before which defendant's appeal was argued affirmed the

judgment. Judge Morris, in that case, wrote a dissenting opinion for the reasons stated in which, upon a rehearing *En Banc,* the action was reversed and dismissed. *Lloyd v. Calhoun,* 82 Wash. 35, 143 Pac. 458.

In the majority opinion of the Department of this court, it was said in that case:

"It seems to us that the evidence was sufficient to warrant the jury in believing that appellant was negligent in proceeding at an excessive rate of speed, in running to the north side of the road, and in not seasonably turning to the right upon approaching respondent. Clearly, the evidence furnishes ample room for difference of opinion upon the question of appellant's negligence in each of these particulars.

"It is strenuously insisted that, in any event, respondent's negligence was the real proximate cause of the accident. *We are unable to so decide as a matter of law.* In view of the testimony tending to show appellant's excessive rate of speed, his running to the north side of the road, which would be to his left, his late turning to the right as he approached respondent, respondent's apparent honest belief, produced by appellant's action, that, as the situation then presented itself to him, it was not possible for him to turn further to the right without coming in collision with appellant's car, and the apparent impending danger requiring very prompt action; we think the jury had the right to decide, as a matter of fact, that respondent was not guilty of negligence, that he acted as a reasonable person would under the circumstances, and that appellant's negligence was the real proximate cause of the accident.

"It is argued that, had respondent proceeded on his course without turning in either direction, appellant would have missed him and passed to his left when he, appellant, turned to the right. We do not think the evidence is conclusive of this fact, but, even if it were, it is not now so much a question of what would have occurred had this course been pursued, but rather, what did appellant's negligent acts—and we are to assume that the jury believed they were negli-

gent—induce respondent, as a reasonable man, to do at the particular time. The court could not decide, as a matter of law, that respondent acted negligently under the circumstances as they then existed and appeared to him. If appellant's negligence was the cause of respondent's acting as a reasonable ·man, turning to the left, as the jury evidently found, respondent was, under the circumstances, absolved from obeying the law of the road and turning to the right. It must be conceded that a somewhat convincing argument can be made, as it has been by counsel for appellant, in favor of appellant upon this branch of the case. It may be that the court might disagree with the conclusions reached by the jury. But we think it cannot be said that there is no room for honest difference of opinion as to the negligence constituting the real proximate cause of the damages here involved. *This makes the case one for the jury and not for the court.*"

In the dissenting opinion in that case, the inquiry was suggested, why, if respondent turned to the left to avoid the collision with appellant, he did not turn to the right on the "smooth prairie," where there was no obstacle to prevent the safe driving of his machine. His excuse was the existence of telephone poles along the road; but the reasoning of the dissenting opinion was to the effect that there was ample distance within which to avoid a telephone pole on the smooth prairie. The writer of the dissenting opinion then said:

"*It is true that the verdict of a jury is conclusive upon contested facts,* but I find no conflict in any of these determinative facts."

Referring to the place of the accident which resulted in that action, the opinion said:

"At this place, the highway runs westerly across a level, open country, is unfenced, ungraded and undefined upon the ground except by tracks worn by vehicles."

It is evident that the court felt, in that case, that, as to the material facts which secured a reversal of that cause, there was no conflict. That is not so here. We are unable to say that conditions were such that Shelley should have turned his car farther to his right. The jury undoubtedly took that fact into consideration, as well as the fact of his turning to the left.

Appellants allege error in the refusal of the court to give the following requested instruction:

"It is the law of this state that every person operating a vehicle upon a public highway shall operate the same in a careful and prudent manner and so as not to endanger the life and limb of any person, and any person so using the highway shall, upon meeting another person, seasonably turn to the right of the center of the highway so as to pass without interference. A failure to comply with any of these requirements by the plaintiff S. R. Shelley when upon the public highway would constitute negligence, and, if you shall find that he failed to comply with any of these requirements your verdict will be in favor of the defendants.

"In determining the line that would constitute the center of the highway you are instructed that turning to the right of the center of the highway means the right of the center of that part of the highway whether gravel or a dirt road, which is at the time open and in a reasonably safe and fit condition for travel by the ordinary modes."

The court gave the substance of this instruction in other instructions, but modified the latter paragraph of the requested instruction and charged the jury as follows:

"In determining the line that would constitute the center of the highway, you are instructed that turning to the right of the center of the highway means the right of the center of that part of the highway, whether gravel or dirt road, which is contiguous and at the time open and in a reasonably safe and fit con-

dition for travel by the ordinary modes. If, however, the highway in question, which means the space from the fence on one side to the fence on the other, had upon it two or more beaten traveled tracks, one of them gravel and the other dirt, and if each had defined and well marked limits or boundaries, with a plain and distinct line of demarcation between them, the right of the center of the highway to one who was using one of these traveled tracks, in such an event would mean the right of the center of the track such person was at the time traveling.''

We are of the opinion that, under such circumstances as might have been found by the jury in this case as to the condition of the legal highway, whatever may have been the difference between the gravel and the dirt road, if any, the above charge of the court was a correct charge.

Appellant also complains of the refusal of the court to give the following instruction:

''If you shall find that the defendants' car was being driven on the traveled portion of the highway and on the approach of plaintiffs' car and as soon as the person driving the defendants' car could with reasonable care and caution turn to his right and was in the act of turning to the right and the plaintiff S. R. Shelley failed to turn to his right and on account of said failure a collision occurred, then the plaintiffs cannot recover as it was the duty of the plaintiff, Shelley, to turn to his right as well as for the defendant.''

This instruction was given in substance in the eleventh instruction of the court, as well as the first paragraph of the instruction of which the last paragraph was heretofore quoted, the eleventh instruction being as follows:

''It is not necessary to the exercise of due care on the part of the driver of an automobile that he anticipate that the driver of another car, which he is about to meet, will violate the law of the road by driving on

the wrong side of the highway.  One who violates the
law of the road by driving on the wrong side assumes
the risk of such an experiment and is required to use
greater care than if he had kept on the right side of
the road.  If a collision takes place under such circum-
stances, the presumption is against the party who was
on the wrong side.  But the presumption is *prima facie*
and has the effect only of casting the burden of justi-
fying his position upon the man who was on the wrong
side.

"If you find that at the time of the collision the
plaintiff was driving his automobile on his left of the
center of the traveled part of the highway and that the
driving of his car to the left of the center was the
proximate cause of the collision, your verdict will be
for the defendants, unless you further find by a pre-
ponderance of the evidence that plaintiff in turning
his car to the left of the center of the highway, if he
did so turn it, acted under an emergency such as would
justify a reasonable man under like circumstances in
believing that it was necessary to so turn his car to
the left in order to prevent an imminent collision with
the defendants' car, and the plaintiff must have hon-
estly believed and have had reasonable ground to be-
lieve that such a course on his part was the only way
to avoid imminent collision with the defendants' car.
It was plaintiff's duty in meeting and passing defend-
ants to seasonably turn to the right and he would only
be excused from the performance of that duty upon
the happening of an emergency in the nature of an
apparent danger of collision with defendants' car in
case he obeyed the law of the road and turned to the
right.  If at the time plaintiff turned his car to the left
of the center of the highway, if he did so turn it, the
defendants' car was far enough away so that a reason-
able man under like circumstances would not hon-
estly believe that a collision was imminent if the law
of the road were obeyed, then the plaintiff would be
negligent in turning his car to the left, and if doing so
was the proximate cause of the collision, the plaintiffs
cannot recover.''

Appellants complain of the giving of the eleventh instruction, but we are satisfied that it accurately stated the law, and it was also on the whole very favorable to appellants.

Appellants also complain that the verdict was excessive, and of the instruction given by the court to the jury as follows:

"If your verdict shall be for the plaintiffs you will find what damages they have shown themselves entitled to by a fair preponderance of evidence as the proximate result of defendants' negligence, including the damage, if any, to their automobile, and the personal injuries, if any, to both Mr. and Mrs. Shelley, and such expense, if any, as was necessarily incurred for medical attendance and allow them such sum as will fairly compensate them for their injury."

The instruction of the court as to the measure of damages certainly stated the law correctly and for the very serious injury sustained by respondents and the damages to their car, proven to the jury, we would be very loath to say that two thousand dollars was an. excessive award. It will stand.

There is a conflict in the testimony of appellants and respondents and the other occupants of their respective cars as to what happened and how it happened; and on the various versions of the accident, the jury resolved in favor of respondents. It follows from what we have said that we may not disturb the verdict of the jury.

The judgment is therefore affirmed.

Parker, C. J., Bridges, Mackintosh, and Fullerton, JJ., concur.