[No. 29224. Department One. March 20, 1944.]

W. A. PURDIE, *Respondent*, v. H. G. BRUNSWICK
*et al., Appellants.*[1]

[1]Reported in 146 P. (2d) 809.

*Elliott & Kells,* for appellants.

*Cosgrove, Terhune & Schlosstein,* for respondent.

STEINERT, J.—This action grew out of a collision between two automobiles traveling in opposite directions along a city street. Plaintiff, the owner of one of the vehicles, brought suit to recover damages for the injuries and loss sustained by him in the accident. Defendants cross-complained for damages done to the automobile owned by them. The cause was tried to the court without a jury. The trial court found that the collision and resulting damages were caused solely by the negligence of the defendant driver. Judgment was entered in favor of the plaintiff, and the defendants appealed.

The accident occurred about seven-fifteen o'clock in the morning, June 4, 1942, on Othello street, in the city of Seattle, at a point near the intersection of that street with Thirty-seventh avenue south. According to the record, Othello street extends generally in a southeasterly and northwesterly course but, for convenience, is spoken of as extending in an easterly and westerly direction. Near the place where the collision occurred, as hereinafter described, the street, proceeding in its westerly course, makes a somewhat abrupt, elbow-shaped bend towards the north, or conversely, proceeding in its easterly course, towards the south. The street is paved to a width of twenty feet, and, in the vicinity of the bend, a flat, solid shoulder ten feet wide lies next to the southerly margin of the pavement.

For some time prior to the day of the accident, a sewer was being constructed along Othello street and, in the general area of the bend spoken of above, the contractor had piled the excavated earth irregularly on both sides of the highway. The mound of earth on the northerly side was piled, at its apex, to a height estimated by the

trial judge to be about twice the height of an ordinary automobile. For a distance of from thirty to fifty feet longitudinally along the northerly side of the highway the earth encroached upon the pavement to the extent of from three to six feet, with a height in that area variously estimated at from two or three feet to six, or possibly ten, feet. Thus, the mound of earth on the northerly side obstructed approximately one-half of the northerly half of the highway as customarily used by traffic going in a westerly direction. This made it physically impossible for westbound traffic to pass the obstruction except by partially invading the southerly half of the paved street.

The hillock of earth on the opposite, or southerly, side of Othello street did not encroach upon the pavement, but, in reality, left both the pavement and the abutting shoulder on the southerly side clear and unobstructed.

That portion of the highway west of the bend is virtually straight for a distance of approximately one thousand feet but has a descending grade, towards the east, until it reaches a point about a block and a half west of the bend, and then proceeds onward, eastwardly, on a level. Easterly of the bend, the course of the highway from the east toward that point is around a curve and upon an ascending grade of five or six per cent. One driving an automobile from the east and approaching the crotch of the bend, where the encroachment of earth was heaviest, could see traffic coming from the opposite direction for a distance of from seventy-five to two hundred feet ahead, although his observation in that respect would be attended with some difficulty.

On the day in question, the weather was clear, the pavement was dry, and the general visibility was good. Respondent, W. A. Purdie, was driving his Mercury coupe sedan in an easterly direction along Othello street toward the point where the road made the bend and where the mounds of earth were located. He was traveling at a speed of fifteen miles an hour and remained at all times upon his right-hand, or southerly, side of the paved portion of the street. At the same time, appellant H. G. Brunswick, to

whom we shall hereinafter refer as though he were the sole appellant, was driving his 1928 Oldsmobile sedan in a westerly direction along Othello street toward the obstructed portion of the road, at a sustained speed of twenty-five miles an hour. Both of the parties were familiar with the road and the existing conditions, having recently driven over it many times.

There is a conflict in the evidence as to the exact point at which the collision occurred. Respondent testified that, while yet traversing the level stretch of the street just west of the bend in the road, he saw the appellant approaching him, within the limits of the curve where the earth extended onto the highway; that he thereupon pressed his brake and diminished his speed; but that the appellant, after passing the obstruction and gaining the level stretch, swerved his car to the left, crossed the center line of the unobstructed portion of the pavement, and collided head-on with respondent's car at a point one hundred fifty feet beyond, or west of, the westerly end of the encroaching earth. Appellant, on the other hand, testified that the collision occurred well within that portion of the road which was obstructed by the protruding mound. He conceded, however, that at the time of the collision he was astride the center line of the paved road and that up to the moment of the impact he had not seen respondent's car at any time. It is undisputed that the left front end of appellant's car collided with the left front end of respondent's car.

The trial court in its memorandum decision found that throughout appellant's progress around the obstruction he did not diminish his speed at all, at least not appreciably; that after attaining the straightaway beyond the obstruction he "flared out, as it were," running first across the highway and then suddenly changing his course, so that the respondent, who was then endeavoring to bring his car to a stop, was left in a state of uncertainty as to what appellant was attempting to do; and that the collision occurred on respondent's side of the road at a point about fifty feet away from the westerly end of the obstructing

earth. In our opinion, the evidence clearly supports the view expressed by the trial court.

■ Appellant contends, first, that, by reason of the obstruction existing upon the highway, the center line thereof automatically and of necessity moved correspondingly toward the farther, or southerly, side of the street. We are unable to subscribe to that view, for, if such were held to be the law, it would not only create irregularity and uncertainty as to center lines of streets and highways in general, but also would be most confusing to all automobile users of the highway, particularly those who should come upon an obstruction for the first time or who could not with any degree of precision determine the nature or extent of the particular obstacle. The rights and duties of users of the highway under such contingencies are not to be measured solely and strictly by any such dogmatic, yet uncertain, standard.

The legislature of this state has recognized the general fixity of center lines of public highways and has prescribed a definite rule of action for persons operating vehicles upon such highways. Rem. Rev. Stat., Vol. 7A, § 6360-75 [P. C. § 2696-833] provides:

"Whenever any person is operating any vehicle upon any public highway of this state he shall at all times drive the same to the right of the center of such highway except when in the exercise of care in the overtaking and passing of another vehicle traveling in the same direction, *or where an obstruction exists it is necessary to drive to the left of the center of such highway, providing the same is done with due care and right of way is extended to vehicles traveling in the proper direction upon the unobstructed portion of the public highway.*" (Italics ours.)

The general rule pertaining to such situations is, as stated in an annotation appearing in 113 A. L. R. (1938) at page 1337:

"When there is an obstruction or pitfall on the right-hand side of the street, the driver of an automobile has the right to drive on his left around the obstruction and to be on the left-hand side of the street temporarily and for the necessary time and distance to enable him to pass the

obstruction or pitfall, if in doing so he exercises the proper degree of care as regards others using the street in that immediate vicinity."

It is to be noted, however, not only that the temporary right thus permitted under the general rule is qualified by the duty to exercise the proper degree of care with regard to other users of the street, but also that, under the italicized portion of the statute quoted above, the person driving to the left of the center line of a public highway because of an existing obstruction has the additional duty to extend the right of way to the vehicle traveling in the proper direction upon the unobstructed portion of the road.

▪ In this connection, appellant further contends that, under the existing circumstances, it was respondent's duty to turn off the paved portion of the road onto the solid shoulder on his right and thus permit appellant to pass him in safety. Indubitably, a motorist who, under statutory rules or by accepted custom, has the right of way must nevertheless exercise reasonable care to avoid colliding with a vehicle which is being driven on the wrong side of the road, the question being always one of ordinary care under the existing circumstances. *Thomson v. Schirber,* 164 Wash. 177, 2 P.. (2d) 664; 2 Berry, Automobiles (7th ed.), § 2.477, p. 561; 2 Blashfield, Cyclopedia of Automobile Law and Practice (Perm. ed.), § 918, p. 60. This is but an application of the universally accepted rule that a motorist must always operate his vehicle with due regard for the safety of other travelers on the highway and must exercise such care as is commensurate with the dangers to be anticipated. So, it might well be that under a state of facts such as those presented by appellant's testimony alone respondent would have been required, in fulfillment of his duty to exercise reasonable care, to drive off the paved portion of the road onto and temporarily along the shoulder. But the facts as found by the trial court do not present a situation consistent with appellant's contention.

▪ It is quite true that the mere fact of driving an automobile upon the wrong side of a street does not render the driver of the vehicle guilty of negligence as a matter

of law. *Burlie v. Stephens,* 113 Wash. 182, 193 Pac. 684; *Bone v. Yellow Cab Co.,* 129 Wash. 503, 225 Pac. 440. However, we have frequently declared and consistently followed the rule that, where a motor vehicle lawfully traveling upon its own right-hand side of the road is struck by another vehicle traveling upon its left-hand side of the highway, the burden is upon the operator of the vehicle on the left, or wrong, side of the thoroughfare to explain how the collision occurred without his negligence. *Hartley v. Lasater,* 96 Wash. 407, 165 Pac. 106; *Crowe v. O'Rourke,* 146 Wash. 74, 262 Pac. 136; *Thomas v. Adams,* 174 Wash. 118, 24 P. (2d) 432; *Lauber v. Lyon,* 188 Wash. 644, 63 P. (2d) 389; *Bernard v. Portland Seattle Auto Freight, Inc.,* 11 Wn. (2d) 17, 118 P. (2d) 167.

In *Hartley v. Lasater, supra,* we stated the rule by quoting from Berry, Automobiles (2d ed.), § 171 (2 Berry, Automobiles (7th ed.), § 2.477), as follows:

"One who violates the law of the road by driving on the wrong side assumes the risk of such an experiment and is required to use greater care than if he had kept on the right side of the road. If a collision takes place under such circumstances, the presumption is against the party who was on the wrong side. But the presumption is *prima facie,* and has the effect only of casting the burden of justifying his position upon the man who was on the wrong side."

This same text is cited in *Peterson v. Pallis,* 103 Wash. 180, 173 Pac. 1021, and *Martin v. Bear,* 167 Wash. 327, 9 P. (2d) 365.

■ We have, moreover, explicitly held, as have other courts, that one driving on the wrong side of the road must exercise a greater amount of care than is required of him when driving on the proper side. *Segerstrom v. Lawrence,* 64 Wash. 245, 116 Pac. 876; *Eubanks v. Mullis,* 51 Ga. App. 728, 181 S. E. 604; *Kelly v. Schmidt,* 142 La. 91, 76 So. 250; *Gravel v. Roberge,* 125 Me. 399, 134 Atl. 375; *Greenbaum v. Costa,* 137 Md. 524, 113 Atl. 79; *Black v. Parke, Davis & Co.,* 211 Mich. 274, 178 N. W. 700; *Heryford v. Spitcaufsky,* 200 S. W. (Mo. App.) 123; 2 Berry, Automobiles (7th ed.), § 2.477, p. 559.

■ In the case at bar, the trial judge in his memorandum decision gave express recognition to the rules above stated, and in the light thereof found that appellant's negligence was the proximate cause of the collision and the resulting damages. In coming to that conclusion, the trial judge stressed the facts that the respondent was driving as an ordinarily prudent person upon the occasion in question; that appellant was driving at an excessive rate of speed, under the existing circumstances; that appellant's continued invasion of his left-hand side of the road was at a point where he had no right or occasion then to be; that immediately before the impact appellant was driving in an erratic course across the center line of the highway, confusing to the respondent; and that appellant failed to observe respondent's car, although he had ample opportunity to do so. The trial judge also stated emphatically that appellant's explanation of the circumstances was not at all satisfactory. In our opinion, the evidence fully warrants these findings and conclusions of the trial court.

■ Although the testimony may have been in conflict in some respects, the rule is well settled that where there is such conflict the findings of the trial court will not be disturbed unless the evidence preponderates against them. *Stangle v. Smith,* 10 Wn. (2d) 461, 117 P. (2d) 207; *Bernard v. Portland Seattle Auto Freight, Inc., supra.* In the instant case, the evidence does not preponderate against the findings.

The judgment is affirmed.

SIMPSON, C. J., BEALS, JEFFERS, and GRADY, JJ., concur.

---

May 3, 1944. Petition for rehearing denied.