[No. 31940.    Department Two.    July 10, 1952.]

HOWARD L. PAYNE *et al.*, *Respondents*, v. GLENN E.
VINECORE *et al.*, *Appellants.*[1]

[1]Reported in 246 P. (2d) 448.

Crollard & Crollard, for appellants.

Hughes & Jeffers, for respondents.

HAMLEY, J.—A head-on collision between two automobiles on a graveled county road between Beebe bridge and the town of Orondo, in Douglas county, gave rise to this lawsuit. The road extends in a northerly and southerly direction, but has a jog in it which requires a southbound driver to turn first to his right (west) and then to his left (south).

Howard L. Payne was driving in a southerly direction along this road. He had made the turn to his right and was completing the turn to his left. At this point the road is twenty-six feet wide from shoulder to shoulder. However, due to the presence of some loose rocks and a shallow washout on the westerly six feet of the road, only the easterly twenty feet of the road was in regular use.

There was from three to six inches of snow on the road, and only one set of tracks had been made in this snow prior to the accident. This set of tracks, which had apparently been used by both north and south-bound traffic, was more or less down the center of the road. However, on the curve in question, the tracks veered towards the inside of the curve, i.e., towards Payne's left (east). The exact location of the tracks at the point of impact is a matter for discussion at a later point in this opinion.

Glenn E. Vinecore was driving north in this same set of tracks. As the two drivers came in sight of each other, Payne pulled to his right and yielded about half of the tracks to the northbound driver. Vinecore did not pull to his right and when he applied his brakes, his car actually swerved somewhat to his left. The head-on collision resulted.

Payne and his wife thereafter brought this action to recover damages sustained by them in the accident. Vinecore answered with a general denial, an affirmative defense of

contributory negligence, and a cross-complaint for his damages sustained in the collision. The case was tried to the court without a jury. The court awarded Payne a judgment in the sum of $784. Vinecore appeals.

Appellant assigns as error the trial court's findings and conclusions to the effect that Payne was not guilty of contributory negligence. It is appellant's position that Payne was contributorily negligent in that his automobile was encroaching upon Vinecore's share of the highway at the time the accident occurred.

The rule of the road here in question is set out in RCW 46.60.010 (Rem. Rev. Stat., Vol. 7A, § 6360-75), and reads as follows:

"Whenever a person is operating a vehicle upon a public highway of this state he shall at all times drive it to the right of the center of such highway except when in the exercise of care in overtaking and passing another vehicle traveling in the same direction, or where an obstruction exists, it is necessary to drive to the left of the center of the highway, providing it is done with due care and right of way is extended to vehicles traveling in the proper direction upon the unobstructed portion of the highway."

Appellant objects to the way in which the trial court determined the "center of such highway" in applying this rule of the road.

It was the trial court's view, expressed in its second oral opinion, that the one set of wheel tracks in the snow marked "the center line of the road that is being used at the time that the accident occurred." The testimony was undisputed that Payne yielded at least one-half of these wheel tracks to Vinecore. The trial court therefore concluded that Payne had not encroached upon Vinecore's share of the highway, and hence was not contributorily negligent.

The proposed findings of fact and conclusions of law which were before the court when this second oral opinion was announced were thereupon redrafted to accord with this view. Thus, in the one paragraph of the revised findings which describes the accident, five different references are made to the one set of tracks on the roadway, and it is

indicated that, for the purpose of this case, these traveled tracks constitute the traveled portion of the roadway.

■ In our opinion, the trial court erred in relying upon the wheel tracks in the snow, regardless of their position on the highway, as indicative of the center of the highway for the purpose of applying this rule of the road. Where, as here, there is no center stripe laid out by road crews, the term "center of such highway," as used in the quoted statute, means the geographical center of the highway.

It would be confusing and dangerous to sanction a temporary shifting of the center line, as so determined, to conform to wheel tracks in the snow. If this were the rule, then the first driver who happened to come along over newly-fallen snow, however good or bad his judgment might be, would have it in his power to lay out, with the wheels of his automobile, a new "center line" which would govern as long as the snow lasted and the single set of tracks was maintained. This would be true even though the driver who made the original tracks might fail to maintain a regular course or might approach dangerously close to one or the other side of the road. Even an experienced and expert driver, traveling over untracked snow, would ordinarily be expected to use the portion of the highway which seemed best from the standpoint of a vehicle traveling in his direction, and would not have in mind that he was laying out a guide for vehicles traveling in the opposite direction.

In *Purdie v. Brunswick*, 20 Wn. (2d) 292, 296, 146 P. (2d) 809, we rejected the contention that an obstruction on the street automatically and of necessity moved the center line of the street correspondingly. We there said that, if such were held to be the law, it would "create irregularity and uncertainty as to center lines of streets and highways in general." If an obstruction in the street does not move the center line, certainly a mere traveled set of tracks in the snow would not move the center line. There is no contention here that the snow itself constituted an obstruction within the meaning of the quoted statute.

In *Shelley v. Norman*, 114 Wash. 381, 195 Pac. 243, we approved an instruction, part of which sanctioned the determination of the center line with reference to two sets of traveled tracks in the gravel or dirt. That is not the situation here. Moreover, that case was decided long prior to the enactment of RCW 46.60.010, and is not authoritative in the construction of that statute.

On this appeal, respondent does not argue in support of the "wheel track" theory. Instead, it is his position that, while the highway was twenty-six feet wide from shoulder to shoulder, only the easterly twenty feet thereof should be considered as the traveled portion of the road, and that, at the time of the impact, Payne's automobile was entirely on his right side of that twenty-foot traveled portion of the road.

The difficulty with this contention is that it is not supported by the findings of fact of the trial court. On the contrary, those findings, when read in the light of the trial court's two oral decisions, establish that Payne was not driving to the right of the center of the easterly twenty feet of the highway at the time of the accident.

It is true that the trial court, in its first oral opinion announced at the close of the trial, adopted the theory which respondent now advances. In its second oral opinion, however, the court stated that, in rendering the first opinion, the court had partially miscalculated the position of the automobiles at the time of the collision. The court then stated that it would make a finding that, at the time of the impact, the east or left side of Payne's car "was approximately 8— 7½ or 8 feet from the east edge of the road according to the measurements."

No specific finding to this effect was actually incorporated into the findings of fact. However, the trial court did find that, at the point of the accident, the wheel tracks "had cut over on the inside of the curve." The court further found that, at the time of the collision, Payne's left wheels were in approximately the westerly track. Read in the light of the trial court's calculation in its second oral opinion as to

the distance between the left side of Payne's car and the east side of the road, this amounted to a finding that Payne was encroaching upon the easterly ten feet of the highway at the time of the accident. Where, as here, the formal findings of fact are consistent with the views expressed in the oral decision, they are to be read in the light of the views expressed in that decision. *Mertens v. Mertens*, 38 Wn. (2d) 55, 59, 227 P. (2d) 724.

This finding of fact is not contrary to the clear preponderance of the evidence. The state patrolman who took the only measurements at the scene of the accident testified that Payne's car came to rest "straddle of the yellow line," though "he was on the west side a little more than he was on the east side." There was no actual yellow line, the patrolman intending by this reference to indicate a point thirteen feet from each shoulder. This would place Payne's left front wheel about ten or eleven feet from the east side of the road.

But the collision had forced both cars to the west, so that the actual point of impact was somewhat east of where the vehicles had come to rest. The state patrolman estimated that the westward movement did not exceed eighteen inches. Payne testified that the collision had forced the automobiles five or six feet "up the road kind of sideways." Leonard Brown, called by respondent, testified that the accident shoved Payne's car sideways and back "three to five feet." Forrest M. Blair, also called by respondent, testified that when Vinecore "hit Mr. Payne's car it didn't move over 3 or 4 feet from the right to the west . . . ." Albert Mitchell, called by appellant, testified that both cars had been pushed sideways to the west "three or four feet."

It would appear from this evidence that the collision occurred about where the trial court said it did— seven and one-half to eight feet from the east edge of the road. Thus, even if respondent is correct in contending that only the easterly twenty feet of the highway should be considered in applying the rule of the road in question, Payne's

automobile was nevertheless encroaching upon Vinecore's share of the road at the time of the accident.

Neither the findings nor the evidence indicate that Payne's presence on the easterly ten feet of the highway was excused under either of the two exceptions referred to in the statute in question. He was not overtaking and passing another vehicle traveling in the same direction. There was no obstruction which required him to encroach upon the easterly ten feet of the highway.

It necessarily follows that this encroachment constituted a violation of RCW 46.60.010, and was negligence *per se*. It is not necessary to decide whether respondent is correct in contending that, under the circumstances of this case, only the easterly twenty feet is to be considered in applying this rule of the road.

Respondent argues that, even had Payne's vehicle been five or six feet farther west on the highway as he was traversing the curve, Vinecore's vehicle still would have collided with respondent's car. In this connection, respondent calls attention to evidence tending to show that, at the time of the collision, Vinecore was driving his vehicle in a straight line in a northerly direction across the apex of the curve. Respondent also cites *Wheaton v. Stuck*, 34 Wn. (2d) 725, 209 P. (2d) 377, to the effect that, if the accident would have occurred regardless of the fact that the defendant may have been operating his vehicle on the wrong side of the road, the right of recovery remains.

It is, of course, true that the mere driving or presence of an automobile on the wrong side of the highway does not constitute contributory negligence unless it is shown that it was a proximate cause of the accident. *Wilson v. Congdon*, 179 Wash. 400, 37 P. (2d) 892; *Wheaton v. Stuck, supra*. In the *Wheaton* case, the defendant entered a county road from a private road without stopping. His car struck plaintiff's vehicle, which was proceeding down the center of the county road. While the facts might have justified the court in holding that plaintiff's encroachment on the left side of the road was not a proximate cause of the acci-

dent, the case actually turned on a different point. The court held that plaintiff was warranted in following tracks down the center of the road, and was, therefore, not negligent, because loose gravel several inches deep constituted an obstruction on either side.

In the instant case, the evidence indicates that Vinecore's car went to its left after he applied the brakes upon seeing Payne's car partially on the east side of the road. It would be pure speculation for us to say that, had Payne seasonably pulled his car over to his right side of the road, Vinecore would nevertheless have applied his brakes at the same time and with the same result. On this record, it seems plain to us that the encroachment of Payne's car on the east side of the road and his failure to extend the right of way was a proximate cause of the accident.

Appellant's remaining assignments of error challenge a number of findings of fact wherein the trial court found that Vinecore was operating his vehicle in a negligent manner and that such negligence was a proximate cause of the accident. This finding has a bearing upon Vinecore's cross-complaint for damages.

Specifically, the trial court found that Vinecore operated his vehicle in a careless, reckless, and negligent manner, and at an excessive rate of speed; that he failed seasonably to turn his vehicle to the right of the center or to yield any part of the traveled portion (set of wheel tracks) of the roadway; and that he applied his brakes, lost control of his vehicle, and skidded into Payne's vehicle.

The finding that Vinecore was negligent in failing to yield half of the road to Payne is not supportable, in view of our discussion above, and in view of the undisputed testimony that it was the two left front ends of the automobiles which came into contact (thereby indicating that Vinecore's car was not encroaching upon Payne's side of the highway).

But the fact that the head-on collision occurred on Vinecore's side of the road does not of itself preclude a finding that his own negligence may have contributed to the

accident. The applicable rule was stated by Judge Steinert, in *Purdie v. Brunswick, supra,* page 297, as follows:

"Indubitably, a motorist who, under statutory rules or by accepted custom, has the right of way must nevertheless exercise reasonable care to avoid colliding with a vehicle which is being driven on the wrong side of the road, the question being always one of ordinary care under the existing circumstances. *Thomson v. Schirber,* 164 Wash. 177, 2 P. (2d) 664; 2 Berry, Automobiles (7th ed.), § 2.477, p. 561; 2 Blashfield, Cyclopedia of Automobile Law and Practice (Perm. ed.), § 918, p. 60. This is but an application of the universally accepted rule that a motorist must always operate his vehicle with due regard for the safety of other travelers on the highway and must exercise such care as is commensurate with the dangers to be anticipated."

We are of the view that, under the circumstances of this case, the specific findings of the trial court as to excessive speed and the losing control of the car are sufficient to support the ultimate finding as to Vinecore's negligence.

Vinecore was a star route mail contractor over the road in question, and had traveled this road hundreds of times. He therefore knew of the conditions which tended to force southbound traffic towards the east side of the road at this particular curve. He was also aware, on the day in question, that apparently all traffic moving in either direction was using the one set of wheel tracks in the snow. The court was justified in finding that his speed, variously estimated at from twenty to forty miles an hour, was excessive under the circumstances, and that his failure to keep his car under sufficient control to meet the emergency which arose, indicated negligence.

The judgment is reversed and the cause is remanded, with direction to enter a judgment of dismissal with prejudice on both the complaint and cross-complaint.

SCHWELLENBACH, C. J., HILL, and OLSON, JJ., concur.

· FINLEY, J. (dissenting)—The action and cross-action for damages in this case result from a collision between two automobiles traveling in opposite directions on an unimproved graveled county road. After a trial without a jury,

the court entered judgment in favor of plaintiffs Howard L. Payne and wife against defendants Glenn E. Vinecore and wife in the total sum of $784. Defendants appealed.

My analysis of the record convinces me that the following facts are established by a preponderance of the evidence: Payne was driving his car in a southerly direction on the county road between Beebe bridge and the town of Orondo, Douglas county, Washington. Glenn Vinecore was driving his car in a northerly direction. As mentioned above, the roadway was a graveled one. It had not been blacktopped or oiled. The graded roadbed (or from outside shoulder to outside shoulder) measured approximately twenty-six feet.

The accident occurred on a curve where the roadway, after proceeding north for some distance, turned sharply at an angle to the east. The westerly or outside portion of the curve was rough and untraveled. There was convincing testimony that this outside portion was strewn with rock —even small boulders, in some places. In negotiating the curve, traffic customarily pulled toward the easterly or inside portion of the roadway to avoid the rougher, rocky outside portion of the curve. The well-traveled, beaten-down, smooth portion of the roadway was about twenty feet in width at the point where the automobiles collided on the curve. The center of this well-traveled, twenty-foot portion was somewhat east of the center of the graded portion of the roadway (outside shoulder to outside shoulder). The entire roadway was covered with snow at the time of the accident. The testimony is conflicting as to its depth but indicates the snow was somewhere between three and six inches in depth.

Traffic on this road was not heavy. Several automobiles using the road for some hours prior to the accident had made and consistently followed a single set of wheel tracks in the snow. These tracks generally were in the center of the twenty-six-foot graded roadway. At the curve in question, the wheel tracks in the snow—each of which was about twelve to sixteen inches in width—veered slightly

to the inside or easterly edge of the graded roadway. Thus, the center of the wheel tracks in the snow was somewhat to the east or towards the inside of the curve in relation to the theoretical center of the entire twenty-six-foot graded roadbed (outside shoulder to outside shoulder). Payne, proceeding southerly, pulled out to his right, yielded the easterly wheel track in the snow to Vinecore, as the latter approached from the other direction. When he first saw the Payne car, Vinecore pumped his brakes. His car went into a skid straight down the wheel tracks in the snow, and collided with Payne's car.

At the point of impact, the left wheels of Payne's car were in the westerly wheel track in the snow. The testimony is conflicting as to whether, after the impact, the two cars skidded from one and one-half to five feet to the west. The state patrolman testified that after the collision he found the two cars approximately astraddle of the theoretical center of the twenty-six-foot graded roadway, but his and other testimony indicated the two cars were somewhat to the west, in relation to the theoretical center of the twenty-foot customarily traveled portion of the roadway. One witness testified that he saw skid marks left by Vinecore's car in the snow for a distance of about sixty feet up to the point of the collision. Payne's uncontroverted testimony was:

"I got out of the car and Mr. Vinecore got out of the car and his car—and I walked up to him and I said, 'What is the matter with you, man, are you drunk or crazy?' He looked at me and says, kind of stammered for a minute or two, and he says, 'Well, I guess I was.' He says, 'I didn't see you and I guess I was driving too fast.' "

Payne further testified that he was driving ten or fifteen miles per hour just prior to the accident; had slowed to five miles, or stopped, when the collision occurred. Vinecore testified that he was driving about twenty-five miles an hour before the collision, and had almost stopped when it occurred. Either party had ample space to have turned to his own right and thereby to have avoided the accident.

In his memorandum opinion, the trial judge stated:

"Now, we have the testimony here that the road was 26 feet wide and the imaginary center line of the road had been located down the center of this 26 foot wide highway. But there is considerable testimony here to indicate that the center line of the traveled portion of the road would not be where Mr. Witten had located it, that is, the center line of the traveled portion of the road.

"Now, we have the testimony of Mr. Mitchell who is one of the defendants' witnesses and he testified that the traveled portion of the road is 20 feet wide. He is familiar with the road. So take six feet off of the 26 feet and you have quite a correction to make there in so far as the center line of this road is concerned, that is of the traveled portion of the road. And as I see it it seems we have to do that particularly in view of the testimony which was not very strenuously disputed, in so far as I can see, to the effect that there were some rocks and a certain amount of boulders on the west side of this 26 foot area and that there was a washout on the west side of this 26 foot area. So, necessarily you can't say that the center line of the road would be 13 feet from each side of the 26 foot width. You'd have to determine the center line from the road as the center of the traveled portion of the road as I see it, gentlemen."

And in his oral colloquy, the trial judge further said:

"That set of tracks that was being used. He yielded his portion and I think that will cover it. And that is the basis of my decision. I might have been wrong. In other words, —Have you got some cases which says that in all cases no matter what the conditions are you have to dig up the snow and find out where the center is and then whoever is on the left side of that center line—wherever it is supposed to be—is in the wrong? I just don't think the Supreme Court will hold that. I don't know, there might be some cases on that. I don't know. None have been presented, but it seems to me that this case is properly decided by just applying the rules of the road and the prudent driving on the part of the operators of the motor vehicles under the conditions which were existing at the time."

The trial court found that all traffic using the unimproved county road was traveling in the one set of snow tracks; that the gravel roadway was covered with three or four inches of snow and was in a slippery condition; that the

roadway had not been cleared of snow by the road crews; that the one set of tracks in the snow was more or less down the center of the graded roadway, and that at the point of collision, the snow tracks cut over to the inside of the curve; that Howard Payne was operating his vehicle in a careful, cautious, lawful and prudent manner; that he drove to the right and yielded one half of the traveled portion of the roadway, his left car wheels being in the westerly snow track at the time of the collision. The trial court further found that "Glenn E. Vinecore operated his vehicle in a careless, reckless and negligent manner and at an excessive rate of speed under the then existing conditions of said roadway, and failed seasonably to turn his vehicle to the right of the center or to yield any part of the traveled portion of said roadway" to Payne; that Vinecore applied his brakes, lost control, and skidded into plaintiff's car, thereby causing the collision.

Appellants' principal reliance is upon Rem. Rev. Stat., Vol. 7A, § 6360-75 (RCW 46.60.010) [P.P.C. § 295-1], which reads as follows:

"Whenever any person is operating any vehicle upon any public highway of this state he shall at all times drive the same to the right of the center of such highway except when in the exercise of care in the overtaking and passing of another vehicle traveling in the same direction, or where an obstruction exists it is necessary to drive to the left of the center of such highway, providing the same is done with due care and right of way is extended to vehicles traveling in the proper direction upon the unobstructed portion of the public highway."

Appellants contend that the above statute required Payne to drive to the right of the center of the twenty-six-foot graded roadbed; that he was negligent in driving to the left of such center line. They further contend, on the basis of this theory, that Glenn Vinecore was not negligent, and that he, rather than Payne, is entitled to recovery of damages.

Appellants assign error to the findings of the trial court (a) that there was adequate room for approaching vehicles

to drive to the right and safely pass on the roadway at the point of the collision; (b) that Payne yielded his half of the traveled portion of the roadway; (c) that Payne's left automobile wheels were in the westerly snow track at the time of the collision.

I cannot agree with the contentions of appellant Vinecore as to error in the above findings of the trial court. It appears to me that a preponderance of the evidence amply supports such findings.

Vinecore further assigns error to the findings of the trial court (a) that he lost control of the car; (b) that he failed to yield any part of the traveled portion of the road to Payne; (c) that Vinecore operated his vehicle in a careless, negligent and reckless manner at an excessive speed. Once again, it appears to me that the record testimony and the facts appearing therefrom, as set out hereinbefore, adequately support the latter-mentioned findings of the trial court.

Vinecore's assignments of error (numbered two and three) to the findings of the trial court that Payne was not negligent and that Vinecore was negligent, and that the latter caused the collision, will now be considered simultaneously and as follows:

Rem. Rev. Stat., Vol. 7A, § 6360-75, requires that "Whenever any person is operating any vehicle upon any public highway . . . he shall . . . drive . . . to the right of the center of such highway . . ." There is persuasiveness in the argument that the statute is applicable only to paved and improved highways where the edges or boundaries are clearly ascertainable and unvarying; that in the matter of unimproved county roads, logically, the statute can only be applied by considering the customarily traveled, beaten-down portion of the county road, defined and marked by the traffic using the road; that the center of such county roads, contemplated by the statute, is the center of the customarily or well-traveled portion thereof.

The trial judge, in his memorandum opinion, noted that traffic on unimproved roads makes use of that portion as

suits the convenience of the users and is ordinarily conducive to safety and ease of travel. He noted that, in improving or oiling the surface of many such roads, the location of the blacktopped portion may vary considerably from side to side on the roadway in relation to the edge of the right-of-way or the edge of the graded portion of such highways, and remarked that the center of the blacktop should be regarded as the center of such highways. The trial judge stated it was difficult to ascertain the center of unimproved county roads or highways. In his memorandum decision, he favored and adopted the theory that the center of an unimproved county road was the center of the customarily traveled portion thereof. In the instant case, it is my belief that the trial judge was thinking not of the center of the wheel tracks in the snow, but that he was thinking of the center of the normally traveled graveled roadbed beneath the snow tracks; and that, on the basis of this approach to the question involved, he decided in favor of Payne. While, as mentioned above, there is considerable logic in the basis of his decision, such a theory is not essential to the decision of this case.

Relative to Rem. Rev. Stat., Vol. 7A, § 6360-75 (quoted above), in *Purdie v. Brunswick,* 20 Wn. (2d) 292, 297, 298, · 146 P. (2d) 809, we said:

"It is quite true that the mere fact of driving an automobile upon the wrong side of a street does not render the driver of the vehicle guilty of negligence as a matter of law. *Burlie v. Stephens,* 113 Wash. 182, 193 Pac. 684; *Bone v. Yellow Cab Co.,* 129 Wash. 503, 225 Pac. 440. However, we have frequently declared and consistently followed the rule that, where a motor vehicle lawfully traveling upon its own right-hand side of the road is struck by another vehicle traveling upon its left-hand side of the highway, the burden is upon the operator of the vehicle on the left, or wrong, side of the thoroughfare to explain how the collision occurred without his negligence. *Hartley v. Lasater,* 96 Wash. 407, 165 Pac. 106; *Crowe v. O'Rourke,* 146 Wash. 74, 262 Pac. 136; *Thomas v. Adams,* 174 Wash. 118, 24 P. (2d) 432; *Lauber v. Lyon,* 188 Wash. 644, 63 P. (2d) 389; *Bernard v. Portland Seattle Auto Freight, Inc.,* 11 Wn. (2d) 17, 118 P. (2d) 167.

"In *Hartley v. Lasater, supra,* we stated the rule by quoting from Berry, Automobiles (2d ed.), § 171 (2 Berry, Automobiles (7th ed.), § 2.477), as follows:

" 'One who violates the law of the road by driving on the wrong side assumes the risk of such an experiment and is required to use greater care than if he had kept on the right side of the road. If a collision takes place under such circumstances, the presumption is against the party who was on the wrong side. But the presumption is *prima facie,* and has the effect only of casting the burden of justifying his position upon the man who was on the wrong side.' "

Rem. Rev. Stat., Vol. 7A, § 6360-75, makes an exception under circumstances "where an obstruction exists" and "it is necessary to drive to the left of the center" of the highway. The exception is to the effect that such driving to the left is permissible, "providing the same is done with due care." In *Wheaton v. Stuck,* 34 Wn. (2d) 725, 728, 209 P. (2d) 377, we said:

"We have consistently held, however, that the mere fact that an automobile involved in an accident was being driven on the wrong side of the street does not render the driver of the vehicle guilty of negligence as a matter of law. *Purdie v. Brunswick,* 20 Wn. (2d) 292, 146 P. (2d) 809. The driver has a right to justify his action, and if the jury is of the view that, in so doing, he was in the exercise of ordinary care, there is nothing on which a finding of negligence can be based. *Burlie v. Stephens,* 113 Wash. 182, 193 Pac. 684; *Bone v. Yellow Cab Co.,* 129 Wash. 503, 225 Pac. 440. Furthermore, it must be shown that the alleged violation of the law is a proximate cause of the accident. If the accident would have occurred regardless of such violation, the right of recovery remains. *White v. Kline,* 119 Wash. 45, 204 Pac. 796; *Bone v. Yellow Cab Co., supra.*

"In the instant case, there was testimony to the effect that the graded portion of the Stilson road was covered with loose gravel, most of which had worked over to the sides of the road, where it reached a depth of six or eight inches. A state patrolman testified that the one set of tracks, ground into the center of the road, was very clearly established. Mrs. Wheaton, whose home was located off the road, testified that cars going both ways customarily followed these tracks, slowing down and turning to one side only when it was necessary to pass another vehicle.

"We think that there was sufficient testimony to permit the jury to find that this loose gravel constituted an obstruction within the meaning of the statute, and that, although the one well-defined lane of travel in the road straddled its center, Mrs. Wheaton was in the exercise of ordinary care in following it. We are, therefore, not of the opinion that she must be held contributorily negligent as a matter of law."

In the instant case, the trial court found or concluded that Payne was not negligent. As stated above, this appears to me to be supported by a preponderance of the evidence. By this, I mean the testimony shows that the roadway to Payne's right was untraveled and obstructed by rock and small boulders; that he turned out, yielding to Vinecore a good portion of the customarily traveled roadbed; that Payne had slowed to five miles, or was stopped, when the collision occurred.

In support of the finding made by the trial judge that Vinecore was negligent, there is Payne's uncontroverted testimony that Vinecore stated, "I didn't see you and I guess I was driving too fast." There is also the testimony that Vinecore skidded sixty feet immediately prior to the collision.

It is my view of the matter that the testimony clearly shows that rock and small boulders were on the westerly portion of the curve; that these constituted an obstruction within the meaning of Rem. Rev. Stat., Vol. 7A, § 6360-75. Disregarding the theoretical center of the twenty-foot customarily traveled portion of the roadway, and assuming that the center of the entire graded road—or the twenty-six-foot-wide outside shoulder to outside shoulder portion —was the center of the highway contemplated by the statute, and assuming that Payne was somewhat to his left of that center, it is my conclusion that the testimony and the facts in this case justified the court finding and concluding that Payne was exercising ordinary care under the circumstances, and that Vinecore was negligent.

The other assignments of error have been considered. They appear to me to be either without merit or to have

been disposed of by discussion of other assignments hereinbefore. I cannot agree with the majority. It is my belief that the judgment of the trial court should be affirmed.