[No. 32617. Department One. August 5, 1954.]

MIKE WENTZ, *Respondent*, v. T. E. CONNOLLY, INC., *et al.*, *Appellants.*[1]

[1]Reported in 273 P. (2d) 485.

· *Skeel, McKelvy, Henke, Evenson & Uhlmann*, for appellants.·

*Campbell & Klasen*, for respondent.

FINLEY, J.—This is a personal injury action, arising from a collision between a truck and a passenger car. The case was tried without a jury and resulted in a judgment of $63,797.25 for the plaintiff.

In 1949, T. E. Connolly, Inc., a corporation, was engaged in a construction project for the United States bureau of reclamation, known as the Bacon tunnel. The corporation constructed a private dirt and gravel road between the project and the nearest public highway lying to the east. The private road, several miles in length, was necessary for the transportation of workmen, material, and equipment to the tunnel. The road, running generally from east to west, branched in a "Y" approximately fourteen hundred feet east of the tunnel. The southwest fork ran up an incline to the mouth of the tunnel. The other fork ran slightly down grade in a northwesterly direction to a parking area for the automobiles of workmen employed on the project.

On the morning of June 30, 1949, Mike Wentz, having completed an eight-hour shift as a workman on the construction project, proceeded to the parking lot. With two other workmen as his passengers, he drove a 1937 Chevrolet coupe slowly from the parking lot in the direction of the "Y," which was about two hundred feet east or southeast from the parking lot. He stopped at the junction, or "Y," looked to his right up the fork toward the mouth of the tunnel, and then to his left, where he saw dust arising some distance down the main roadway leading to the public highway. Thereupon, Wentz proceeded across the junction to the extreme south side of the road, which was on his right-

hand side. He straightened his car to drive down the shank of the "Y" toward the east. He testified that at this time he saw a large truck bearing down on him and pulling over the center of the roadway towards the car he was driving.

Defendant Ralph Scherer was the driver of the truck. He was an employee of defendant T. E. Connolly, Inc., and the truck was being operated by T. E. Connolly, Inc., to transport concrete aggregate to the construction project. The left front part of the truck struck the left front part of the Wentz car, driving the latter backward for a distance estimated, variously, at between forty-five and eighty feet, where the two vehicles came to rest against some large boulders on the south side of the roadway. The road was wide enough at the point of collision to have allowed the truck to pass to the right of the Wentz car and to continue up the fork of the roadway to the tunnel.

Scherer testified that he customarily cut to the left side of the road before he reached the "Y" preparatory to driving up the left, or southwest, fork of the road to the tunnel. He stated that his truck was on the left-hand side of the road at the time of the collision. Scherer further stated that he knew a change of shifts had occurred just prior to the accident, and that workmen on the same shift as Wentz would be driving from the parking area en route to their homes.

The above facts, summarized from the testimony of the several witnesses, were substantially undisputed and were incorporated in the trial court's findings of fact. Wentz was severely injured. A list of his injuries, as found by the trial court from the uncontroverted evidence, is as follows:

"1. Fracture of the left humerus.
"2. Fracture of the left radius and ulna.
"3. Dislocation of the head of the radius.
"4. Partial separation of the sternoclavicular joint.
"5. Loss of 7 teeth and 2 broken.
"6. Bleeding in the left knee joint and roughness of the left knee.
"7. Bruise of the hip.
"8. Extensive multiple contusions involving the posterior side of the left leg from the hip to the knee, the right

leg from the knee to the ankle, the right arm, and the left side of the face.

"9. Short laceration of the forehead over the left eye.

"10. Laceration of lower lip, left side.

"11. Fracture of maxilla, left."

The trial court also found from uncontroverted testimony:

"That as the result of said injuries, the plaintiff's left arm is stiffened and so limited in motion that it cannot be used for manual employment; that traumatic arthritis has set in the elbow joint, causing permanent pain and suffering which will increase in the future; that as the result of the partial separation of the sternoclavicular joint, the plaintiff has a prominent bump, as the result of an abnormal mend, and traumatic arthritis is now present in this joint, and this has caused a limited use of the right arm due to the pain in this joint, which precludes the plaintiff from making any extended use of the right arm for manual labor; that the left knee joint has a roughness causing the plaintiff pain while walking, and that there is a tenderness in the hip as the result of the accident, and the plaintiff has a decided limp; . . ."

The trial court awarded the following damages to Wentz:

| | |
|---|---:|
| Hospital bill | $ 245.00 |
| Doctor bill | 500.00 |
| Ambulance | 52.25 |
| Repair of teeth | 750.00 |
| Pain, suffering and personal injuries | 15,000.00 |
| Loss of wages for three years and nine months at $3,000 per year | 11,250.00 |
| Loss of future earnings at $1,500 per year for 24 years | 36,000.00 |
| | $63,797.25 |

Motions for judgment notwithstanding the verdict and, in the alternative, for a new trial were denied. The corporation and Ralph Scherer appealed.

Appellants' assignments of error may be summarized as follows: (1) The findings of fact by the trial court contain subordinate rather than ultimate facts and, as made, do not support the conclusions of law and the judgment; (2) The trial court failed to find that respondent Wentz was contributorily negligent; and further, the court failed to make any finding on this issue; (3) The evidence does not support the

finding that the earning capacity of Wentz was reduced by fifteen hundred dollars a year; (4) The trial court erred in computing damages for loss of earning power; (5) The allowance of fifteen thousand dollars for pain, suffering, and personal injuries is excessive; and (6) As a result of the alleged errors, above, the trial court erred in entering judgment for respondent and in failing to grant a new trial.

We shall now discuss the assignments of error, summarized above.

We do not understand the appellants to contend seriously that findings of evidentiary facts rather than ultimate facts constitute reversible error. It is true that we have frequently announced the rule that the trial court is not *required* to include evidentiary facts in its findings, but need only find the ultimate facts upon the material issues. *Eickerman v. Eickerman*, 42 Wn. (2d) 165, 253 P. (2d) 962; *In re Mikelson's Estate*, 41 Wn. (2d) 97, 247 P. (2d) 540; *Phelps v. Phelps*, 2 Wn. (2d) 272, 97 P. (2d) 1080. This is not to say that detailed findings are necessarily inadequate to support conclusions of law and a judgment. In fact, where the trial court's findings are supported by the evidence, they are sufficient, if they cover all the issues and support the judgment rendered. *Warning v. Warning*, 40 Wn. (2d) 903, 247 P. (2d) 249.

Appellants do challenge seriously the sufficiency of the findings of fact to support the conclusions of law and the judgment. In essence, appellants argue that, even though their truck was on the left side of the road when it struck the respondent's car, this does not establish negligence or proximate cause. It is argued that respondent Wentz was negligent in failing to allow a fair margin of safety in crossing the junction at a time when he should have been aware of the oncoming truck. It is also contended that, by custom, trucks had the right of way over passenger cars, and that trucks carrying materials to the tunnel customarily traveled on the left side of the road preparatory to entering the left fork leading to the tunnel mouth.

■ These arguments raise the same questions as appellants' other main assignment of error relating to liability; namely, that the court erred in failing to make a finding of contributory negligence on the part of the respondent. In connection with the latter matter, the record shows that the trial court failed to make any *specific finding* on the issue of contributory negligence. However, the memorandum opinion of the court states that a preponderance of the evidence supported the proposition that, if respondent was negligent, such negligence had terminated at the time of the collision because respondent had successfully crossed the road and had straightened out his car on his own side of the road. In the memorandum opinion, the trial court further states that a preponderance of the evidence did not establish any negligence on the part of the respondent in crossing the junction when he did.

We said in *Bowman v. Webster*, 42 Wn. (2d) 129, 253 P. (2d) 934:

. "Where the findings of fact are incomplete or defective in some particular so that a doubt exists as to the theory on which the case was decided, we are sometimes able to overcome the difficulty by referring to the oral or memorandum decision of the trial court. *Kinnear v. Graham, supra* [133 Wash. 132, 233 Pac. 304]; *Mertens v. Mertens, supra* [38 Wn. (2d) 55, 227 P. (2d) 55]; *Payne v. Vinecore*, 40 Wn. (2d) 746, 246 P. (2d) 448. The conclusions of law occasionally can be made to serve a similar function."

We said in *Squires v. McLaughlin*, 44 Wn. (2d) 43, 265 P. (2d) 265:

"Finally, appellant argues that the trial court erred in failing to find and conclude that respondent was contributorily negligent. There was no specific finding or conclusion one way or the other as to this. However, a finding and conclusion that appellant was not contributorily negligent is implicit in the findings of fact and conclusions of law on the basis of which judgment was entered for respondent."

■ Appellants contend that the evidence does clearly preponderate in favor of a finding of contributory negligence on the part of the respondent. We find no merit in the

argument that respondent Wentz was contributorily negligent in failing to allow a fair margin of safety in crossing the junction, in view of the undisputed evidence that he had completely crossed the junction and was on his right side of the road at the time of the collision.

■■ Appellants' strongest argument is based on the fact that the road was a private one and that trucks had the right of way thereon. However, it is conceded that Wentz was an invitee on the private road and, therefore, T. E. Connolly, Inc., and its servants owed him the duty of using reasonable care to protect him from injury while thereon. *Kinsman v. Barton & Company*, 141 Wash. 311, 251 Pac. 563. It is further conceded that there is an established custom to drive on the right side of private roads even though public highway statutes do not there apply. *Segerstrom v. Lawrence*, 64 Wash. 245, 116 Pac. 876.

In *Purdie v. Brunswick*, 20 Wn. (2d) 292, 146 P. (2d) 809, we said:

"We have frequently declared and consistently followed the rule that, where a motor vehicle lawfully traveling upon its own right-hand side of the road is struck by another vehicle traveling upon its left-hand side of the highway, the burden is upon the operator of the vehicle on the left, or wrong, side of the thoroughfare to explain how the collision occurred without his negligence. [Citing cases.]"

■ We believe this rule applies equally to public highways and private roadways, unless, in the latter case, it is shown that the usual custom of driving on the right side does not prevail. Appellant Scherer testified that he customarily cut to the left side of the road just before reaching the "Y," and that the other trucks did likewise. There was no evidence, however, that, with *respect to the rights of other vehicles*, trucks had a right of way to drive on the left side of the road at this point. There was no evidence that appellants had notified their employees of any necessity or custom for trucks to drive on the left. There was no evidence of a knowledge of a custom by other employees that in driving on their own right side of the road in the vicinity of the

"Y" they proceeded at their own risk with respect to trucks driving toward the tunnel.

█ We are convinced that appellants did not sustain the burden of justifying the position of their truck on the left side of the road, and, accordingly, the trial court was justified as to this phase of the matter in refusing to find respondent Wentz guilty of contributory negligence. The court's findings of fact support its conclusion:

"That the defendant Ralph Scherer was guilty of negligence which proximately caused the collision in the following particulars:

" (a) In failing to operate his truck on the right-hand side of the road when he was aware of approaching traffic by the change of shift.

" (b) In failing to keep a proper look-out and timely observe the crossing of the plaintiff's car in the road ahead."

Appellants contend that the damages assessed by the trial court are excessive. From the evidence submitted, the trial court found that respondent's earning power had been diminished by fifteen hundred dollars a year. This finding is attacked for the reason that the appellants did not prove the amount of wages Wentz could earn in his present physical condition. It is argued that, in the absence of such proof, the trial court must have resorted to conjecture as to the diminution of respondent's earning capacity.

The evidence shows that, at the time of the accident, respondent's rate of income was $4,461 a year for a fifty-two-hour week. At the time of trial, the hourly wage rate had increased so that Wentz would have been earning $5,813.60 a year in doing the same type of work for a fifty-two-hour week, or $4,392 a year for a forty-hour week. With regard to his future earning capacity, the evidence showed that Wentz had only a third grade education and could neither read nor write. He had engaged in manual labor all of his life and was untrained for any other kind of work. He was blind in his left eye as a result of a long-existing condition.

His attending physician, Dr. Adams, who is an orthopedic surgeon, testified that Wentz would be unable to perform manual labor but could do light work within the realm of

his educational ability. Specifically, Dr. Adams stated that Wentz could dispense gasoline at filling stations but could not change heavy tires and would have difficulty in wiping windshields. Dr. Adams stated that Wentz would be unable to work as a janitor. He did believe that Wentz could do the work of a night watchman. Dr. Adams concluded by saying that the field of work Wentz could do, in view of his education and physical condition, is quite limited, as far as competing in the labor market is concerned.

Wentz testified that he had worked at only two jobs between the time of the accident and the trial. In each case, the pain and disabilities caused by the accident prevented him from continuing the employment beyond three or four days.

The evidence outlined above, relative to the issue of diminished earning capacity, was sufficient to enable the trial court to make a fair and reasonable estimate of the loss of future earnings. Under the evidence, the finding that Wentz will lose fifteen hundred dollars a year as a result of diminished earning capacity appears to be well within the realm of reasonable certainty and will not be disturbed.

The trial court found that, except for the accident, there was a reasonable expectancy that Wentz could have worked at manual labor until he was sixty-five years of age (or for twenty-four more years), although his life expectancy exceeded such period. The court then multiplied fifteen hundred dollars by twenty-four years to arrive at thirty-six thousand dollars, representing the loss to Wentz for future earnings. Appellants strongly contend that this computation is erroneous in that the product of the multiplication gives the gross earnings which Wentz may be expected to lose rather than the *present worth* of such loss. In support of this contention, appellants cite *Kellerher v. Porter*, 29 Wn. (2d) 650, 189 P. (2d) 223. Therein, we discussed the matter of discounting future losses to arrive at present value. We considered two distinct questions: (1) Should a jury be instructed to reduce loss of future earnings to present value?

and (2) If so, what rate of discount should be considered by the jury?

In answer to the first question, we said:

"It is the generally recognized rule in the United States that the trial court must, or with propriety may, in an action for wrongful death, instruct the jury to limit the amount of recovery in respect of the loss of future pecuniary benefit to its present worth or cash value. The cases on the subject will be found assembled in an annotation appearing in 77 A.L.R. 1439, 1441; for recent cases, see citations in A.L.R. Blue Books of Supplemental Decisions; see, also, Notes (1945), 154 A.L.R. 796 and supplemental decisions.

"While discounting future earnings to present value may at times pose a difficult problem for a jury and, at best, may be only an approximation of damages in that respect, it is nevertheless, in our opinion, a factor which the jury may consider, in connection with all the other facts and circumstances in the case, in determining the amount of damages for loss of future earnings; and, where there is substantial evidence of loss of such earnings, the court may with propriety instruct, and upon proper request *should instruct*, the jury to limit the amount of recovery for loss of such earnings to their present worth or cash value." (Italics ours.)

In the case at bar, there was no jury and no instruction. The trial court was the trier of fact and, in that capacity, arrived at the figure of thirty-six thousand dollars for loss of future earnings. However, we are not permitted to presume that the court, in arriving at this figure, discounted the gross loss in order to find the present value. The memorandum opinion and the findings of fact indicate there was no such discounting.

█ A consistent application of the principles enunciated in the *Kellerher* case, *supra*, requires us to hold that failure to reduce the amount of lost future earnings to their present value was error. To hold otherwise would establish two rules of damages: one to be applied in jury trials, and the other in trials to the court.

We now consider the second question discussed in the *Kellerher* case, namely, the method to be used in determining the present value of future earnings. On this subject, we observed in the *Kellerher* case:

"As is evident from a study of discounting, the present value of future earnings is totally dependent, as a mathematical computation, upon the rate of discount that is used. The higher the rate of discount that is adopted, the lower will be the present value of any aggregate amount of future earnings."

In the *Kellerher* case, we considered the methods used in other jurisdictions in determining the correct discount rate and concluded that the soundest rule is that applied in Federal-employers'-liability-act cases. We formulated the rule in the following language:

"In our opinion, the trial court, when requested, should, by its instruction, inform the jury of the method to be used in determining the present value or worth of future earnings; and should further advise the jury that it should use as the discount rate that rate of interest which, in its considered judgment, *is reasonable, just, and right under all the circumstances*, taking into consideration the evidence presented, the jury's knowledge of the prevailing interest rates within the limits prescribed by law in that area, and what rate of interest could fairly be expected from safe investments which a person of ordinary prudence, but without particular financial experience or skill, could make in that locality." (Italics ours.)

Under the above rule, the determination of a discount rate is a question of fact and not of law. The determination should be made by the trier of fact—in this case, the trial court—using as its guide the principles quoted above. Pursuant to the foregoing, we think the case must be remanded. Upon remand, we would deem it proper for the trial court in its discretion to call for and to receive from the parties whatever evidence it desires on the matter of determining the correct discount rate within the principles announced in the *Kellerher* case.

Appellants have further challenged the trial court's awards for loss of earnings between the time of the accident and the trial and for pain and suffering. The evidence does not preponderate against the court's findings on these items, and they will not be disturbed.

The judgment is reversed with respect to the computation of damages for diminished earning capacity. In all

other respects, the judgment is affirmed. The cause is remanded with instructions to ascertain the present value of the lost future earnings in accordance with the views expressed above. The appellants will recover their costs of appeal.

GRADY, C. J., MALLERY, HAMLEY, and OLSON, JJ., concur.

