[No. 32874. Department One. November 18, 1954.]

CHARLES M. ROHDA *et al.*, *Appellants*, v. OLAV BOEN *et al.*, *Respondents.*[1]

[1]Reported in 276 P. (2d) 586.

*Dodd & Russell*, for appellants.

*Lycette, Diamond & Sylvester* and *Lyle L. Iversen*, for respondents.

FINLEY, J.—This is an action for a division of profits, or, in the alternative, for unpaid salary. The controversy arises out of the operations of Boen-Sealand Constructors, a joint venture comprising a partnership (Olav Boen Construction Company) and a corporation (Sealand Construction, Inc.). The partnership portion of the joint venture was composed of three men, each having an equal interest in the partnership. The corporation had three stockholders, each owning one third of the stock, and each being a director and an officer of the corporation. This suit was instituted by appellant Charles M. Rohda, one of the stockholders and president of the corporation, to recover twenty-five thousand dollars which he alleges was either (1) his share of the *profits of the joint venture for the year 1952, or* (2) his salary for that year.

Appellants' claim to a share of the profits of Boen-Sealand Constructors rests on the premise that the joint venture was *in fact composed of the six individuals* rather than the two legal entities, the partnership and the corporation.

Prior to the formation of the joint venture in the spring of 1950, the partnership and the corporation had each been working on government contracts in Alaska. Because it was deemed to the mutual advantage of each firm, they formed the joint venture to pool their resources for the purpose of gaining additional bonding capacity and borrowing ability to facilitate future bidding on larger government contracts. The joint venture contract was entered into on June 26, 1950.

At this time, the three stockholders executed an indemnity agreement to the members of the partnership. To enable the joint venture to obtain credit and bonding, all six individuals subsequently executed an agreement of guaranty to a bank and an agreement of indemnity to a bonding company.

In that part of the joint venture contract which states its purpose is the following provision:

"It Is Hereby Stipulated that:

"(a) . . .

"(b) . . .

"(c) No officers, employee or any partner of *either of the parties* shall be directly compensated from the funds of this joint venture except they shall be compensated for such time as such officers or partners or employees *are directly connected with the actual performance of the work to be done* . . . *or actually engaged specifically for the benefit thereof*; . . ." (Italics ours.)

By the end of 1950, it had become apparent that the venture would be a profitable one. Realizing that their operations would reflect a large profit, consideration was given to ways and means of charging a larger proportion of the earnings to cost of operations for the purpose of reducing tax liability and obtaining a more favorable basis for contract renegotiation. Among other measures that were taken, it was decided that the joint venture would pay

twenty-five thousand dollars per year to each of the "partners" as "salaries." The minutes of the meeting of the joint venture on December 15, 1950, read:

"3. The paying of salaries to the partners was discussed. It was decided that due to the progress of the contract no salaries would be paid any of the partners from the joint venture for the year 1950. But that starting with January 1-1951 all partners would be paid $25,000.00 per year direct from Boen-Sealand. This salary not to be paid monthly but to be paid at the end of the year some time in December of 1951 in order to conserve our capital during the year."

The sum of twenty-five thousand dollars was paid to each of the six individuals in 1951.

On September 23, 1952, appellant was removed as president of the corporation. He thereafter secured releases of any further liability on his indemnity and guaranty agreements. On October 7, 1952, the joint venture took formal action to terminate appellant's employment with the joint venture. Thereafter, appellant was notified of this action. He performed no services for the joint venture after October 7, 1952. The joint venture subsequently tendered to appellant a check in the amount of $15,342.55 as his salary, prorated to that date. This check represented a gross salary of $19,245.69, less old-age benefit and Federal income tax. The check was returned by appellant and, subsequently, was paid into court by respondents.

At the trial of this action, respondents' challenge to the sufficiency of the evidence, at the conclusion of appellants' case, was sustained. The court made findings of fact and conclusions of law to the effect: *that the appellant was not a party to the joint venture and was not entitled to any of the profits of the joint venture; that the provision for payment of twenty-five thousand dollars per year was a provision for payment of salary; that appellant's contract of hire was terminable at the will of either party; that appellant was discharged on October 7, 1952; that appellant should recover only his prorated salary to that date,* which was the amount of the check tendered by respondents and refused by appellant.

Appellants' assignments of error raise two questions: (1) Was the challenge to the sufficiency of the evidence properly sustained? (2) Does the evidence clearly preponderate against the significant findings of fact of the trial court, which are challenged by appellants?

■■ When, *in a trial to a jury,* the defendant interposes a challenge to the sufficiency of the evidence at the conclusion of plaintiff's case, the question to be determined by the trial court is whether the plaintiff has proved sufficient facts to entitle him to have the jury decide the issues of the case. Plaintiff's evidence and inferences therefrom must be construed most favorably to him. However, *in a trial without a jury,* the situation is somewhat different, and the trial judge may *weigh* the plaintiff's evidence in disposing of a motion challenging the sufficiency of the evidence. *Graff v. Geisel,* 39 Wn. (2d) 131, 234 P. (2d) 884; *Fisher v. Hagstrom,* 35 Wn. (2d) 632, 214 P. (2d) 654; *Lambuth v. Stetson & Post Mill Co.,* 14 Wash. 187, 44 Pac. 148.

■ The trial judge obviously did weigh the evidence here, as indicated by the entry of findings of fact. These findings are adverse to the appellants on all of the issues of fact which had to be sustained to establish their right to recover. Unless the evidence clearly preponderates against these findings, they will not be disturbed. We shall now discuss the evidence relating to the significant findings of the trial court.

Regarding appellants' theory that the six individuals were in fact the true parties to the joint venture, the trial court found that appellant Charles M. Rohda was not a party to the joint venture. In support of his contention that the six individuals created between themselves all of the personal obligations involved in the activities of a joint venture, appellants refer to the evidence that the three stockholders of the corporation executed an agreement promising to indemnify the members of the partnership against any default by the corporation in connection with the joint venture agreement. However, this arrangement is not inconsistent with the theory that the partnership and the cor-

poration were the parties to the joint venture. It is in fact the obvious thing for members of a partnership (who have unlimited liability) to require from the stockholders of a corporation (whose liability was, according to the record, limited to thirty thousand dollars) when the two organizations are about to engage in a joint business venture.

Counsel for appellants also argues that the agreements of guaranty and indemnity, which were executed by all of the individuals to the bank and the bonding company, constitute evidence that the individuals were the true parties to the joint venture. These agreements were evidently required by the bank and the bonding company before they would extend credit and provide performance bonds. The agreements appear to indicate nothing more than legitimate efforts to obtain credit and performance bonds.

There are other instances in the record of ambiguous conduct on the part of the six individuals. This conduct is consistent with the theory of either appellants or respondents as to the true composition or nature of the joint venture. However, the basic legal composition of the joint venture was *never formally changed,* and, presumably, remained the same. The fact that individuals connected with a business organization fail to observe, in all the organization's dealings, the exact legal procedure necessary to maintain the pristine character of that particular business form inviolate is not, in itself, enough to justify a trial judge in finding that the organization—in this case, a joint venture, embracing two legal entities (a partnership and a corporation)—has undergone a subtle metamorphosis, and has emerged a joint venture composed of the individual stockholders of the corporation and the individual members of the partnership. Such a result is not inconceivable, but the facts here do not appear to justify or to lead convincingly to such a result or finding. In fact, we cannot say that the evidence clearly preponderates against the crucial finding of the trial court: that the appellant was not a party to the joint venture. In other words, the joint venture was com-

posed solely of the two legal entities, (1) the corporation, and (2) the partnership.

■ The trial court found that the appellant was not entitled to any profits of the joint venture. In view of the provision in the contract of joint venture prohibiting direct compensation to an officer of the corporation except in return for time spent in performance of services to the joint venture, it is clear that appellant would not be entitled to any distribution of the profits, although he might be entitled to salary for services rendered.

■ The trial court found that the provision for payment of twenty-five thousand dollars was for payment of salary. Appellants argue that this arrangement was in fact a device to siphon off the profits, and thereby avoid tax liability. However, such an arrangement is consistent with a legitimate effort to charge to cost certain items of operating expense so that the true profits will be reflected. In view of the highly profitable nature of the business, we cannot say that these salaries were so excessive as to indicate a scheme to distribute profits. When we further consider the fact that throughout the record the terms "salary" and "salaries" are the only terms used by the joint venture in referring to the payments of twenty-five thousand dollars per year to each of the six individuals, we cannot say that the trial court was not justified in finding that the payments were salary payments.

■ In connection with appellants' alternate theory of recovery—that he was entitled to the entire yearly wage for 1952—the trial court found that the services of appellant Charles M. Rohda with the joint venture terminated on October 7, 1952. Counsel for appellants argues that the contract was not terminable at will. When a contract of hire provides for payment at a yearly rate, with no provision that the hiring is for a specified period, it is a contract terminable at the will of either party. *Davidson v. Mackall-Paine Veneer Co.*, 149 Wash. 685, 271 Pac. 878. An exception to this rule is provided for in those cases where proof is given of a custom in the industry which makes the hiring

for a definite period. Appellants have produced no such evidence. Appellants do argue, however, that the rule should be qualified by the addition of a provision stating that additional circumstances may show that the agreement was for a definite period. Even were we to accept this qualification to the rule, appellants have not presented sufficient proof of any other relevant facts which might establish a hiring for a definite period.

The trial court found that Charles M. Rohda was entitled only to compensation for services rendered from January 1, 1952, to October 7, 1952. Appellants contend that, even if he was properly discharged on October 7, 1952, he was nevertheless entitled to his salary for the entire year, because he had performed all the work he was to do for that year. Appellants present no evidence on this point other than their own conclusion that all of appellant Rohda's work required under the employment arrangement was done or performed by him prior to his discharge. Respondents, on the other hand, presented testimony that much work remained which, normally, Charles M. Rohda would have done, and that they were required to assume some of this work after he was discharged. The evidence does not clearly preponderate against the above finding.

Having determined that the evidence does not clearly preponderate against any of the challenged findings, they become the established facts of this case; and, as we find no merit in appellants' assignments of error, the judgment of the trial court is affirmed.

GRADY, C. J., MALLERY, and HAMLEY, JJ., concur.

OLSON, J., concurs in the result.