[No. 34787.   Department Two.   April 7, 1960.]

WILMA E. STRINGFELLOW, *Respondent*, v. VIRGIL O. STRINGFELLOW, *Appellant.*[1]

[1]Reported in  350 P. (2d) 1003, 353 P. (2d) 671.

*Floyd M. Reischling* and *Max R. Nicolai*, for appellant.

*Riddell, Riddell & Williams*, for respondent.

Foster, J.—This is an appeal by the defendant husband from a decree of divorce.

The parties, married in 1929, have accumulated a fortune and have one son now aged twenty-two.

The trial consumed four weeks and one day, and the statement of facts contains slightly in excess of twenty-five hundred pages, one hundred sixty-seven pages of which is argument addressed to the trial court. The charges and countercharges are sordid, indeed. No professional enlightenment would be gained from the details, and public policy decries a permanent memorial to the revolting stories. Certain it is that the marriage is dead, and no useful purpose would be served by a recitation of the details in the concluding act of the judicial autopsy.

Different aspects of this domestic tragedy have been here previously. *Stringfellow v. Stringfellow*, 53 Wn. (2d) 639, 335 P. (2d) 825. While there are thirty-four separate assignments of error, individual discussion is unnecessary. Several of them deal with the findings granting the plaintiff a decree of divorce. Six specific items of cruelty were found by the trial court, which also found that each instance of cruelty caused the respondent wife great anguish and distress. In some aspects, such findings depend upon the testimony of the respondent wife alone, but in many others her testimony is corroborated.

On the stand appellant denied each act of cruelty.

██ While there is no specific finding, if such be necessary, that one party was unworthy of belief and that the

other party's testimony was entitled to credence, it is unmistakably clear that the court disbelieved the appellant and believed the testimony of the wife. This was solely the function of the trial court. The record convinces us, nevertheless, that no other conclusion was possible. Factual disputes are to be resolved by the trial court. The Washington constitution, by Art. IV, § 6, vests that power exclusively in the trial court. The power of this court is appellate only, which does not include a retrial here but is limited to ascertaining whether the findings are supported by substantial evidence or not. If we were so disposed, but we are not, we are not authorized to substitute our judgment for that of the trial court. *Wise v. Farden*, 53 Wn. (2d) 162, 332 P. (2d) 454; *Hinz v. Lieser*, 52 Wn. (2d) 205, 324 P. (2d) 829; *Kuyath v. Anderson Constr. Co.*, 52 Wn. (2d) 174, 324 P. (2d) 264; *Hendricks v. Dahlgren*, 52 Wn. (2d) 108, 323 P. (2d) 658; *Gilliland v. Mount Vernon Hotel Co.*, 51 Wn. (2d) 712, 321 P. (2d) 558; *Fischler v. Nicklin*, 51 Wn. (2d) 518, 319 P. (2d) 1098; *Bremerton School Dist. 100-C v. Hibbard*, 51 Wn. (2d) 226, 317 P. (2d) 517; *Fancher v. Landreth*, 51 Wn. (2d) 297, 317 P. (2d) 1066; and *Croton Chemical Corp. v. Birkenwald*, 50 Wn. (2d) 684, 314 P. (2d) 622.

■ The appellant contends that the matrimonial offenses pleaded and proved by the wife against him are absolutely barred under the doctrine of condonation. We do not agree. The court below correctly disposed of this defense in the following words:

". . . We fail to find substantial reliable evidence that the resumption of marital relationships constituted condonation, and hold that in any event it does not preponderate over the evidence of the plaintiff. We have here a distraught woman, married for twenty-eight years to a strong-willed and obviously domineering husband. She yielded to her desire and his pleas for a reconciliation, but only on condition that she would be treated in a manner different from in the past.

"There was no change in the defendant's attitude when he was confronted with reliable and incriminating evidence. He arbitrarily and stubbornly refused to explain away this evidence. He even challenged her to get evidence further to incriminate him. She did just that.

"Therefore, the plaintiff is entitled to a divorce for the reasons outlined above and others inherent in the evidence."

Appellant's argument is that condonation is implied because the parties resumed marital relations after a divorce action was instituted by the wife in February of 1957. This was dismissed April 19, 1957, since which time marital relations have not been resumed. On April 22, 1957, respondent wife again sued for divorce, resulting in the decree from which this appeal is prosecuted.

■ Condonation implies a full and free forgiveness of matrimonial offenses and is conditioned upon future conjugal kindness. The predominate aspect is the intent of each party. Respondent was willing to forgive, conditioned upon the appellant's changed treatment of her. If there is any one undisputed factor in the evidence, it is that the appellant never accepted this condition but stubbornly resisted it. He insists, and his counsel stoutly argued at our bar, that he was not guilty of any matrimonial offense although the overwhelming evidence is to the contrary.

As to one aspect of the charges, he said "Well, you prove it." She did. This is not proof of forgiveness.

■ Moreover, condonation requires a knowledge by the condoner of all of the marital offenses by the other, a completed agreement to forgive, and a restoration of the offender to all marital rights. It is not a trap for the unwary forgiving wife, but, on the contrary, is a question of intent which is here conspicuous by its absence. Condonation involves, freely and wholeheartedly, a forgiveness with full knowledge of the marital misconduct of the other. The appellant's argument comes to this: That indulgence in the sexual act constitutes a blanket forgiveness of all matrimonial offenses. Such is not the law. When applied to a studied course of conduct over a period of twenty-eight years, such as the cruel and inhuman conduct disclosed by this record, that theory would be a strange mutation on the law. *Edwards v. Edwards*, 47 Wn. (2d) 224, 287 P. (2d) 139; *Rentel v. Rentel*, 39 Wn. (2d) 729, 238 P. (2d) 389; *Murray v. Murray,* 38 Wn. (2d) 269, 229 P. (2d) 309; *Rackett v. Rackett,* 5 Wn. (2d) 262, 105 P. (2d) 22; and *Quient v.*

*Quient,* 105 Wash. 315, 177 Pac. 779, fully sustain the trial court in refusing to apply the doctrine of condonation as a bar to the respondent's action.

■ In cruelty cases where the ground of divorce pleaded and proved is a course of conduct rather than a single act, the defense of condonation can be a bar only when there is actual forgiveness. Certain it is that such is absent here. We fully agree with the words of the supreme court of California in *Morton v. Morton,* 117 Cal. 443, 446, 49 Pac. 557:

"The point that plaintiff must be held to have condoned defendant's offenses, because she lived and cohabited with him after the action was commenced and until the summons was served, cannot be sustained. In an action for divorce on the ground of cruelty there can be no condonation unless there is a reconciliation between the parties, a remission of the matrimonial offenses and an express agreement to condone. 'Condonation implies a condition subsequent; that the forgiving party must be treated with conjugal kindness.' . . ."

Appellant contends that respondent is barred from a divorce because of the doctrine of recrimination. Our examination of the record fails to convince us that the doctrine of recrimination is applicable in this case. ·

The astuteness and skill of the appellant husband created a substantial community fortune. He complains of the trial court's division of it. Testimony of the value took a wide range. According to one expert, the share awarded the wife was fifty-two per cent of the total. According to another, the share awarded the appellant husband was sixty per cent. The record discloses that the trial court bestowed painstaking care upon the solution of this aspect of the controversy. We are not disposed to interfere.

■ However, there are phases of the award which should be modified to meet appellant's criticism. Some of the corporations awarded to appellant husband were indebted in a substantial amount to other corporations awarded the wife. Furthermore, the wife has a money judgment of $61,916.94 against the husband. Appellant argues that, because of this indebtedness which the respondent wife may summarily enforce and because of the

amount of the indebtedness, an irreparable hardship will be worked upon him. To avoid this possibility, the decree will be modified by allowing the appellant to discharge, in five equal installments, the indebtedness of all of the corporations and the judgment; the first installment shall be due six months after the filing of the remittitur. Interest at the standard legal rate shall apply during this period. Of course, appellant may pay the entire indebtedness at any time before maturity.

█ There need be no guaranty to secure the obligations. The courts keeping in mind the equities of the situation, will afford adequate protection. Likewise, if appellant should fail to make one of the installment payments, the decision as to the effect of the default shall be made then by the trial court in the light of all of the circumstances and motives. We are aware that this situation is different from that of the ordinary commercial debtor-creditor relationship, and equitable principles, rather than strict legal rules, therefore control.

█ Certain interim allowances were paid by the husband to the wife pursuant to court order. In an earlier opinion in the course of this litigation, *Stringfellow v. Stringfellow*, 53 Wn. (2d) 359, 333 P. (2d) 936, we said:

"Whether the amounts paid under such an order are ultimately charged to the community or to the wife's share of the community property, if it be divided, is not a matter for present concern or determination, but should await the consummation of the litigation."

The litigation has now been consummated. In view of the property division and the situation of the parties, it is ordered that the temporary attorneys' fees and suit money be charged to the community; the support money is ordered charged to the wife's share in the property.

As thus modified, the decree is affirmed. Taxable costs are to be charged to the community.

WEAVER, C. J., HILL, FINLEY, and ROSELLINI, JJ., concur.

July 1, 1960. Petition for rehearing denied.