[No. 36086.    Department Two.    March 7, 1963.]

JACK EDWARDS, *Appellant,* v. MORRISON-KNUDSEN COMPANY, INC., *Respondent.*\*

\*Reported in 379 P. (2d) 735.

*Sweeney & Hunter (David C. Hunter, of counsel)*, for appellant.

*Allen, DeGarmo & Leedy,* by *Gerald DeGarmo,* for respondent.

HAMILTON, J.—Plaintiff appeals from an adverse judgment entered in his action to recover salary and lodging allowances arising from the alleged breach of an employment contract.

In August, 1955, plaintiff received the following letter from defendant:

"MORRISON-KNUDSEN COMPANY, INC.
Contractors and Engineers

"Principal Office
319 Broadway, Boise, Idaho

"M-K Contract 1787    "Address reply to
AF 33-600-29717      Pouch 7
           Anchorage, Alaska
          "August 22, 1955

"Mr. Jack Edwards
6704 Weedin Place
Seattle, Washington
"Dear Sir:

"We are starting a very large and extensive project in the Territory of Alaska and we wonder if you would be interested in taking the position of Structural Steel Superintendent.

"We will be in need of your services commencing about September 15, 1955. You will select your own foreman and hire as many local men as possible and still retain an efficient organization. You can bring a few key men from the States as foremen although we do have several here who have previously worked for the Company. These men have not been hired as yet and will be subject to your approval.

"Your salary will be $1,250.00 per month. Room and board will be furnished on the job-sites, where you will be spending the bulk of your time. Transportation will be furnished to and from Anchorage, Alaska and to and from

job-sites. This project will last about two years and possibly longer.

"We would appreciate hearing from you at the earliest possible date.

"Very truly yours,
"MORRISON-KNUDSON COMPANY, INC.
"Don W. Hitchcock [s]
"Don W. Hitchcock,
"General Construction Supt.
"Contract 1787

"P.S. Mr. 'Butch' Perron has recommended you."

By return mail, plaintiff unequivocally accepted the proffered employment with defendant.

On October 4, 1955, plaintiff reported to Anchorage, Alaska, and continued in the employment of defendant, on contract No. 1787, until November 10, 1956, when he was terminated, without cause, the termination notice stating "LAID OFF—REDUCTION IN FORCE." The following spring, defendant employed another as structural steel superintendent until August 17, 1957, when the steel work was completed.

Plaintiff, by three causes of action, seeks recovery of (a) salary from November 10, 1956, to August 17, 1957; (b) board and lodging allowance between October 4, 1955, and August 17, 1957; and (c) one month's unpaid salary (December, 1955) when he was incapacitated due to on-the-job injuries. Plaintiff premises his claims upon his contentions that: (1) The employment was for a fixed term—the duration of the steel work on contract No. 1787; (2) but for defendant's actions, he would have spent the "bulk" of his time on job sites; and (3) custom and practice prescribes payment of salary for short periods of incapacity.

Defendant, on the other hand, contends: (1) There was no fixed term contract; (2) if there existed an employment contract, such is unenforceable because of indefiniteness; and (3) plaintiff's endorsement on salary checks subsequent to December, 1955, constituted an accord and satisfaction.

The trial court found, *inter alia*: Plaintiff's unconditional acceptance of the employment offered by defendant's let-

ter of August 22, 1955; plaintiff's termination; termination of substantially all construction superintendents due to winter shut down; custom and practice in Alaska regarding winter construction shut downs between November and April; readiness of plaintiff to resume his employment with defendant; defendant's employment of another and conclusion of steel work on contract No. 1787 on August 17, 1957; plaintiff's management of his own time and whereabouts during his employment—that is, whether he was or was not on job sites; plaintiff's injury and hospitalization in December, 1955, and the acceptance and endorsement of subsequent salary checks.

From such findings, the trial court concluded:

(1) "That the letter of August 22, 1955, (Plaintiff's Exhibit 1) did constitute an offer of employment to Plaintiff on the part of Defendant and although it was unconditionally accepted by Plaintiff, as it was, was not a contract of employment for the life of Contract 1787 so as to cut off and terminate the common law right of an employer to hire and fire at will."

(2) "That even if a contract of employment had been created between Plaintiff and Defendant by Plaintiff's Exhibit 1 and the Plaintiff's unconditional acceptance thereof, the Plaintiff released the Defendant from all possible liability for salary during the period from December 2, 1955 to January 3, 1956, by signing of the endorsement upon the checks issued by Defendant to Plaintiff following his injury on November 30, 1955."

(3) "That Plaintiff has no claim against Defendant under the facts of this case as covered by the Findings of Fact herein upon any of the causes of action as asserted by the Amended Complaint and there should be entered herein a Judgment of Dismissal of the Plaintiff's Amended Complaint and of each and every action set forth therein with prejudice and with costs to be taxed in favor of the Defendant against the Plaintiff as provided by law."

Plaintiff assigns error to conclusions of law Nos. 1 and 2; to the trial court's findings of fact relating to termination of other superintendents, and to an Alaskan custom of ceasing construction work between November and April of each year; to the refusal of the trial court to enter cer-

tain of plaintiff's proposed findings; and to the admission of certain evidence.

We agree with the trial court's conclusion of law, based upon the findings of fact, that the correspondence between the parties gave rise to a contract of employment.

The basic question involved, insofar as concerns plaintiff's claim for salary following November 10, 1956, is whether the employment contract was for a definite term—that is, for the duration of the steel work on contract No. 1787— or simply a contract of employment for an indefinite term —terminable at will.

Plaintiff contends that the terminology of defendant's offer, taken with the character, nature, and circumstances of the employment, including the salary scale, distance factors, travel and lodging allowances, living conditions, supervisory responsibility, and the economic factors of supervisory personnel turnover, compels the legal conclusion that the employment was intended by both parties, and particularly accepted by plaintiff, as being for the term of the project, or until completion of the steel work.

Defendant, on the other hand, asserts the employment arrangement was too indefinite as to duration to be other than an employment terminable at will.

The pertinent rule, applicable to the circumstances here presented, would appear to be succinctly summarized in 35 Am. Jur., Master and Servant § 19, p. 456 as follows:

"A contract of employment which by its express terms is for a definite time or to last until a definite day presents, of course, no problem concerning its duration and termination. The employer has the implied right to discharge the employee for cause, but otherwise the employment cannot be terminated of right during the term of its existence as expressed in the contract. . . .

"Where no definite term of employment is expressed, there is no inflexible rule governing the duration of the relationship. In such cases, the duration of the employment must be determined by circumstances in each particular case. It is dependent upon the understanding and intent of the parties, to be ascertained from their written or oral negotiations, the usages of business, the situation

and object of the parties, the nature of the employment, and all the circumstances surrounding the transaction. Regardless, therefore, of the absence of any express stipulation regarding the term of employment, a dispute as to the duration of a contract of employment is to be settled with reference to the terms of the contract, the nature of the services which were agreed to be performed, and the attending circumstances which evidence the intention of the parties, and this is true where the contract is in writing, as well as where it is oral; in either case, the court takes into consideration the situation of the parties, and the objects they had in view. In case the contract has been made with reference to a general custom or business usage which enters into and becomes a part of the agreement, the contract is not, of course, indefinite as to its duration if such custom or usage fixes the term of the employment."

See, also, *Lasser v. Grunbaum Bros. Furniture Co.,* 46 Wn. (2d) 408, 281 P. (2d) 832; *Rohda v. Boen,* 45 Wn. (2d) 553, 276 P. (2d) 586; Restatement, Agency (2d) § 442 (b), p. 339; 161 A. L. R. 706, 713; 56 C. J. S., Master and Servant § 8 (b), p. 75.

We held in *Lasser v. Grunbaum Bros. Furniture Co., supra,* and on the subsequent appeal of the same case (50 Wn. (2d) 191, 310 P. (2d) 259), that a question of fact was presented in determining whether a contract of employment, in a particular case, was for a fixed term or of indefinite duration.

The facts and circumstances presented in the instant case lend themselves to conflicting inferences upon the intended duration of the employment. The trial court did not make an ultimate finding of fact upon this issue. In fairness to the trial court, neither party proposed such a finding.

Resort to the trial court's oral decision does not clarify the factual pattern upon which the trial court decided this phase of the case. The findings of fact as entered neither support nor contradict the trial court's conclusion of law in this respect. The function of ultimate fact finding is exclusively vested in the trial court. The power of this

court is appellate only. *Stringfellow v. Stringfellow,* 56 Wn. (2d) 957, 350 P. (2d) 1003, 353 P. (2d) 671.

■ Accordingly, upon this cause of action, the case is remanded to the trial court for entry of a finding of fact determining the intended duration of the employment contract in question. If the trial court finds, as a fact, the parties intended plaintiff's employment to continue until completion of the steel work upon contract No. 1787, then plaintiff would be entitled to judgment for salary for those months he would, under the facts as otherwise found, have been employed upon the project by defendant, between November 10, 1956, and August 17, 1957, less such of his intermediate earnings as may, under the evidence, be found in mitigation thereof. If the trial court determines, as a fact, the employment to have been for an indefinite term, then judgment as entered upon this cause of action would stand.

We turn next to plaintiff's second cause of action. Plaintiff seeks reimbursement, before and after November 10, 1956, for the value of board and lodging (measured on a per diem basis) to be furnished to him under the contract of employment at such times as he was upon job sites. In finding of fact No. 6, the trial court found as follows:

"That it was the custom and practice in the northern part of the Territory of Alaska, where the work of Contract 1787 was to be performed, well known to both Plaintiff and Defendant on August 22, 1955, and at all times material hereto, for all major outside construction activities to cease about November 1, of each year, and not to be resumed until on or about April 1 of the following year due to the severity of the winter weather. During the period of Plaintiff's employment by Defendant, his movements were as shown by Plaintiff's Exhibit 13 insofar as his presence in Anchorage or at one or more of the job sites was concerned. During the period from October 4, 1955, to approximately April 1, 1956, the presence of Plaintiff in Anchorage was dictated either by the winter construction season mentioned or by the duties of Plaintiff as Structural Steel Superintendent upon Contract 1787 and not by any demands or restrictions of Defendant and thereafter and during the remainder of his employment period the Plain-

tiff was his own boss and determined his own movements in the performance of his work. During such periods of time the Plaintiff submitted to Defendant numerous expense accounts as contained in Plaintiff's Exhibits 14 and 16 and Defendant's Exhibits 18, 20 and 22 and for which he was reimbursed or paid by Defendant as shown thereby."

Plaintiff assigns error to the first sentence of finding of fact No. 6, and to the rejection of evidence bearing upon a possible cause of plaintiff's frequent presence in Anchorage prior to November 10, 1956. He assigns no error to the trial court's conclusion of law No. 3 insofar as such relates to the second cause of action.

It is undisputed that, following November 10, 1956, plaintiff was not upon any of the job sites. If we consider, as a proper element of damage under the employment contract here before us, the value of board and lodging accorded plaintiff upon job sites, we are immediately confronted with the measure thereof. Under the contract, it is predicted plaintiff would spend the "bulk" of his time upon the job sites. Under the unchallenged portion of finding No. 6, it is apparent that variables, such as weather, official duties, and plaintiff's discretion, necessarily enter into any calculation of such time. Plaintiff calculated his purported loss by multiplying the number of days, less Sundays, by a fixed per diem amount. He offered no evidence concerning the reasonableness thereof. We do not deem plaintiff's calculation a proper measure of such damages under the circumstances.

The evidence amply supports finding of fact No. 6, and such finding, together with the undisputed facts, amply supports the trial court's conclusion as to plaintiff's second cause of action. We find no merit in plaintiff's assignments as they relate thereto.

Plaintiff's third cause of action seeks payment of one month's salary for December, 1955. During this period, plaintiff was incapacitated due to on-the-job injuries. Upon this facet of the case, the trial court found, in part, as follows:

" . . . That it was the custom and practice in the construction industry to compensate persons of the status of Structural Steel Superintendent, such as Plaintiff, during the period of hospitalization and recovery from injuries sustained in the course of employment. That following the Plaintiff's return to work for Defendant on January 3, 1956, and at the end of the first salary period and at the end of each salary period thereafter and upon termination of employment the Plaintiff received checks from Defendant . . . which bore a clause above the place for endorsement as follows:

" 'By endorsement of this check, the undersigned acknowledges payment in full of all his claims and demands against Morrison-Knudsen Company, Inc. on account of labor performed to and including the period stated on the face of this check.'

and each of said checks was endorsed by Plaintiff below such wording."

Upon the basis of such findings of fact, the trial court concluded as a matter of law plaintiff had released defendant of liability for the salary in question. To this conclusion, plaintiff has assigned error.

We are constrained to disagree with the trial court.

In *Meyer v. Strom,* 37 Wn. (2d) 818, 823, 226 P. (2d) 218, we said:

"An accord and satisfaction is founded on contract. *Seattle Investors Syndicate v. West Dependable Stores,* 177 Wash. 125, 30 P. (2d) 956; *Graham v. New York Life Ins. Co.,* 182 Wash. 612, 47 P. (2d) 1029; 2 Restatement, Contracts 785, § 417; 1 Am. Jur. 217, Accord and Satisfaction, § 4. Therefore, to create an accord and satisfaction there must be a meeting of minds of the parties upon the subject and an intention on the part of both to make such an agreement. . . ."

The subject matter of plaintiff's claim is for compensation during a period of incapacity resulting from on-the-job injuries. It arises out of a custom and practice found to exist in the particular industry. The subject matter of the endorsement relates to claims "on account of labor performed." It does not purport to acknowledge payment for claims arising otherwise.

We hold plaintiff did not thereby release his claim for the December, 1955, salary payment in question. Judgment should accordingly enter for the amount due, less such time loss payments plaintiff otherwise received.

We find no merit in plaintiff's remaining assignments of error.

The case is remanded to the trial court with directions to proceed in accordance herewith. Plaintiff shall recover costs on appeal.

OTT, C. J., DONWORTH, and HUNTER, JJ., concur.

FINLEY, J. (concurring in part, dissenting in part)—I agree with the majority that the phrase, "on account of labor performed," appearing in an endorsement on the back of paychecks signed and cashed by the plaintiff, should be strictly construed; furthermore, that the endorsement signed by the plaintiff is *not clearly* an accord and satisfaction precluding his claim for salary while incapacitated by on-the-job injuries. Therefore, on the basis of the finding of the trial court respecting the custom and practice in the industry concerning compensation for time loss from on-the-job injuries, I concur in the conclusion of the majority that the judgment of the trial court on plaintiff's third cause should be reversed.. Furthermore, I agree with the majority in affirmance of the judgment of the trial court denying and dismissing plaintiff's second cause.

However, I cannot agree with the majority's review and disposition of the plaintiff's first cause.

For some time now, in our appellate process, cases tried to a jury have been handled somewhat differently from those tried to the court, *i.e.*, trial judge. With reference to the latter cases a rule has been applied distinguishing, technically at least, between findings of fact and conclusions of law. This dichotomy as to findings of fact and conclusions of law (implemented by a requirement that the trial court make and enter (a) findings of fact and (b) conclusions of law) has been described as a necessary one, justified on the ground that the appellate court can-

not or should not be required to search the evidentiary record from stem to stern, and then be required to weigh or evaluate the evidentiary factual pattern and to describe the result by making and entering, in effect, appellate court findings of fact. We have said resoundingly that evaluating the evidence, making and entering findings of fact, is exclusively the prerogative of the trial court. We have further attempted to limit the appellate function by discarding the rule that findings of fact entered by the trial court will be accepted as verities if supported by a *clear* preponderance of the evidence, or even if supported in lesser degree by a preponderance of the evidence. Instead, we have enunciated and applied a rule that the findings of fact of the trial court are to be accepted as verities if supported by *substantial* evidence. At first blush, and abstractly, these variants of our rule of appellate procedure may seem clear, logical and convincing. However, curiously enough, it is less than crystal clear what subjective, objective, or other standards of measurement are available and appropriate to determine the quantum of evidence requisite to satisfy the three rule variants. Upon close analysis, the record relative to concrete applications of our rule of appellate procedure is not so clear, and not so seemingly logical and convincing. We have held that the trial judge's written memorandum opinions or stenographic transcriptions of oral opinions may be resorted to, to clarify and to give meaning to findings of fact which otherwise, in our judgment, might not be clear. *Rutter v. Rutter* (1962), 59 Wn. (2d) 781, 370 P. (2d) 862; *Hodges v. Gronvold* (1959), 54 Wn. (2d) 478, 341 P. (2d) 857; *Guerin v. Thompson* (1959), 53 Wn. (2d) 515, 335 P. (2d) 36; *Miller Lbr. Co. v. Holden* (1954), 45 Wn. (2d) 237, 273 P. (2d) 786; *Wentz v. T. E. Connolly, Inc.* (1954), 45 Wn. (2d) 127, 273 P. (2d) 485; *Bowman v. Webster* (1953), 42 Wn. (2d) 129, 253 P. (2d) 934; *Payne v. Vinecore* (1952), 40 Wn. (2d) 746, 246 P. (2d) 448; *Mertens v. Mertens* (1951), 38 Wn. (2d) 55, 227 P. (2d) 724. We have held on occasion that findings of fact, described and entered as such by the trial judge, may

be treated as conclusions of law (*Fain v. Nelson* (1960), 57 Wn. (2d) 217, 356 P. (2d) 302; *Kane v. Klos* (1957), 50 Wn. (2d) 778, 314 P. (2d) 672; *Grove v. Payne* (1955), 47 Wn. (2d) 461, 288 P. (2d) 242; *McClendon v. Callahan* (1955), 46 Wn. (2d) 733, 284 P. (2d) 323; *Miller Lbr. Co. v. Holden, supra; Wygal v. Kilwein* (1952), 41 Wn. (2d) 281, 248 P. (2d) 893), and conversely (*Hoke v. Stevens-Norton, Inc.* (1962), 60 Wn. (2d) 775, 375 P. (2d) 743; *Coolidge v. Pierce Cy.* (1902), 28 Wash. 95, 68 Pac. 391).

With the foregoing in mind, it seems to me that the disposition by the majority opinion of appellant's first cause suggests some reconsideration of this appellate rule dichotomy relative to findings of fact and conclusions of law, as well as reconsideration of the cases applying and relying upon this dichotomy in terms of appellate case review and disposition.

Reference will now be made to some of the language of the majority opinion relative to disposition of plaintiff's first cause, and some analysis of this language and the reasoning involved will be attempted. The majority opinion cites *Lasser v. Grunbaum Bros. Furniture Co.* (1955), 46 Wn. (2d) 408, 281 P. (2d) 832, for the proposition that it is a question of fact whether a contract of employment is for a fixed or an indefinite term. Thereupon, in the first sentence of the following paragraph, the majority opinion reads:

"The facts and circumstances presented in the instant case lend themselves to conflicting inferences upon the intended duration of the employment."

This sentence emphasizes facts and circumstances; no distinction is suggested and no differentiation is made as between facts and circumstances. Albeit the sentence then refers to "inferences"—conflicting ones—based upon or apparently arising from previously mentioned facts and circumstances. It is not clear whether these inferences are (1) interpretations of the facts and circumstances, (2) value judgments, (3) hunches, (4) psychological or other emotive reactions, or (5) something closely akin to legal

conclusions; that is, at least something different, more or less, from so-called simple, unvarnished evidentiary facts. The conflicting inferences are said to be related to "the intended duration of the employment." This, it seems to me, injects another factor, namely, intent. But it is not clear whether intent is determined by subjective or objective standards, whether intent is a state of mind from the standpoint of medical psychiatry or psychology, or a legal concept or conclusion related to evidentiary facts in the record, having some bearing upon the thought processes of the plaintiff or the defendant. The succeeding sentence of that particular paragraph states that the trial court did not make an *ultimate* finding of fact upon this issue. With this collocation of words, a modifier (adjective in nature) is injected as another factor in the picture. This suggests some differentiation between facts and *ultimate* facts, without providing the reader with an explanation, elaboration, or justification of the suggested distinction. The next succeeding paragraph states,

"Resort to the trial court's oral decision does not clarify the factual pattern upon which the trial court decided this phase of the case."

The majority thus decline any help from the trial court's oral decision, but stick to the proposition that the trial court's decision, without labeling the decision a conclusion of law, should be supported by an *actual* or a factual pattern. In the next sentence, the majority state:

"The findings of fact as entered neither support nor contradict the trial court's conclusion of law in this respect."

Without opening Pandora's box and getting into such questions as: what are facts? what are conclusions? what are findings of fact? and what are conclusions of law?—[1] the above-quoted statement by the majority is of course orthodox, but again general in nature and only reasonably con-

---

[1]Fuller: *Human Purpose and Natural Law*, 3 Natural L. F. 68 (1958); Nagel: *On the Fusion of Fact and Value*, 3 Natural L. F. 77 (1958); Morris: *Law and Fact*, 55 Harv. L. Rev. 1303 (1942); Isaacs: *The Law and the Facts*, 22 Colum. L. Rev. 1 (1922).

vincing. Citing *Stringfellow v. Stringfellow* (1960), (56 Wn. (2d) 957, 350 P. (2d) 1003, 353 P. (2d) 671), the paragraph concludes:

"The function of ultimate fact finding is exclusively vested in the trial court. The power of this court is appellate only."

The majority opinion then remands the case to the trial court for the *entry of a finding of fact* relative to and determinative of the intended duration of the employment of the plaintiff-contractor.

It seems to me the point has been reached that consideration should be given to revision of the rules on appeal to the end that our review of cases tried to the courts, *i.e.,* the trial judges, will be handled in the same manner as cases tried to a jury. The rules evolved, and as annotated in our cases, are sufficiently unclear in meaning and application that I have serious doubts if even appellate convenience is facilitated.

As to appellate convenience and assistance in saving time unnecessarily spent in reading lengthy records in hundreds of cases appealed, a simple rule will serve adequately: namely, that counsel, in appellate briefs and argument, be required to indicate clearly by reference to pages and lines those parts of the statement of facts (evidentiary record) which support the contentions of the parties on appeal.

An orderly appellate procedure and a more accurate and informative description of it would be more likely by a change to a simple rule, provision, or modus operandi comparable to that applicable in cases tried to a jury. Thus, the decision-making function and the final judgment entered by a trial judge would be affirmed if supported by substantial evidence; or, if the evidence is clearly in conflict or, described another way, if the evidence is reasonably and rationally believable and convincing, and the result or judgment reached by the trial judge does not shock the conscience of the judges of the appellate court.

In the instant case, I think that the trial judge in his

decision-making function has indicated clearly that (a) from his evaluation of the evidentiary pattern before him, and (b) in his judgment, the contract of employment was one for an indefinite rather than a definite term. The only time reference in the letter offering employment in Alaska to the plaintiff is a sentence which reads:

"This project will last about two years and possibly longer."

The phrase, "about two years and possibly longer," is certainly a general rather than a specific reference to time or to duration. This language, such as it is, is a reference, generally speaking, to the project, its time, or duration. The reference is not to plaintiff's period of employment. The language of this letter of employment, coupled with other substantial evidence in the record, supports the decision of the trial judge that the plaintiff's term of employment was indefinite.

Realistically, it seems to me the trial court has evaluated the evidence, and therefrom has decided that the legal result to be attributed to the conduct of the parties and the circumstances surrounding their conduct added up to a contract, not for the duration of the construction project, but terminable as was done by the defendant. In one sense this is a legal conclusion or a conclusion of law reached by the trial court. Remanding the case will not change the mind of the trial court as to the legal effect to be attributed to the actions and relationships of the parties. Realistically, the suggestion that the trial court make or enter a finding of fact as to the "intended duration of the contract" most likely will produce some statement labeled a "finding of fact," which in turn will be said to support the legal conclusion previously reached by the trial court in disposing of this facet of the controversy. On this aspect of the appeal I would affirm the trial court. Since appellant, as I view the matter, has prevailed only in part, and not too substantially, I would leave each side to its own costs.